**Opinion issued July 2, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00913-CV

———————————

**THE CITY OF HOUSTON, Appellant**

**V.**

**SHANE WILBURN, Appellee**

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-65827**

---

## O P I N I O N

The City of Houston Fire Department placed Captain Shane Wilburn on indefinite suspension—the equivalent of termination—from his captain position, based on Wilburn's positive results in a random drug test. After the Police Officers

and Firefighters' Civil Service Commission of Houston (Commission) upheld the department's disciplinary action, Wilburn sued the City for reinstatement and sought a declaration that the City lacked the authority to indefinitely suspend him, because it failed to comply with Chapter 614 of the Government Code. Chapter 614 requires that Wilburn receive a copy of a written complaint and have a right to investigate facts that may serve as the basis for disciplinary action against him. *See* TEX. GOV'T CODE ANN. § 614.023 (West 2012). Wilburn moved for partial summary judgment, contending that the Fire Department's failure to comply with Chapter 614 rendered its decision to terminate his employment invalid. The trial court granted the motion and, based on that ruling, granted the remainder of the relief Wilburn requested, including reinstatement, back pay, seniority rights, and attorney's fees.

On appeal, the City contends that the trial court erred in invalidating its employment decision based on Government Code Chapter 614. It seeks affirmance of the Commission's decision on the ground that substantial evidence supports the Commission's suspension decision. We hold that the trial court erred in concluding that Wilburn met his summary judgment burden to prove that the City failed to comply with Chapter 614. We do not consider the City's request for affirmance of the Commission's decision on substantial evidence grounds, because it did not first

2

seek that relief in the trial court. We therefore reverse the trial court's judgment and remand the case for further proceedings.

## Background

The City of Houston has a drug testing policy, entitled the Mayor's Amended Drug Detection and Deterrence Policy, which applies to relevant "safety impact" positions, including all fire fighters. Fire fighters agree to submit to random drug testing as a condition of employment. The policy provides that the City has "zero tolerance" for positive test results: "an employee whose drug test has been confirmed positive by the [City's medical review officer (MRO)] shall be indefinitely suspended." The policy also subjects employees to testing in other, non-random circumstances—for instance, when reasonable suspicion exists to warrant drug testing. The employee's supervisor must identify, in writing, the grounds giving rise to reasonable suspicion. Possible grounds include (1) a pattern of abnormal or erratic behavior; (2) information provided by a reliable and credible source; (3) direct observation of drug use by a supervisor or manager; or (4) presence of the physical symptoms of drug use. The policy articulates other circumstances that are deemed to give rise to reasonable suspicion for drug testing. These include: (1) violent or threatening behavior; (2) absenteeism or tardiness; or (3) unexplained loss of City property, equipment, or money. In addition, the policy explains that an on-the-job accident may result in a recommendation for drug

3

testing and that testing is a condition of transfer or promotion to a safety impact position.

The policy also details the testing protocols used to analyze the specimen. It provides that:

> When drug screening is required or authorized under the provisions of this policy, a urinalysis test will be given to detect the presence of amphetamines, cocaine metabolites, opiate metabolites, phencyclidine, marijuana metabolites and, if appropriate, anabolic steroids.

> The initial drug screening shall be by enzyme immunoassay techniques (EMIT) test which shall be administered at a City approved laboratory and at City expense. If an initial drug screen yields a positive result, a second confirmatory test, at City expense, using a gas chromatography/mass spectrometry (GC/MS) test will be conducted on a portion of the same urine sample provided by the applicant or employee for use in the initial drug screen.

Wilburn was among the City employees randomly selected for drug testing on July 21, 2010. Pursuant to the policy, Wilburn signed an "Employee Informed Consent," acknowledging his understanding that

- the urinalysis would be conducted under the direction of qualified laboratory personnel;

- refusal to consent to cooperate with testing may subject him to disciplinary action up to and including discharge;

- two-stage testing would occur following a positive result on the EMIT test; and

- if the drug test is confirmed to be positive, he is subject to disciplinary action up to and including discharge.

4

Wilburn checked the box acknowledging his consent and signed the form. He submitted a urine specimen, which tested positive for cocaine metabolite. The lab results, signed by the certifying scientist, were delivered to the MRO.

The policy makes the MRO responsible for receiving drug test reports, reviewing and interpreting lab reports, and speaking with the employee to determine whether some benign, alternative medical explanation accounts for the positive test result. If the MRO determines that a positive test result demonstrates a violation of the policy, the MRO must consult with the relevant department regarding the results and appear, when necessary, to represent the City in any proceeding involving drug testing or results.

After receiving the lab results, the MRO contacted Wilburn on July 26 to determine whether Wilburn had taken any medication that could have yielded the positive test results. Wilburn denied using cocaine and told the MRO that he had been taking an antibiotic. According to the MRO, the antibiotic Wilburn was taking would not have caused a false positive test for cocaine metabolite. The MRO informed Wilburn and the department of the testing results.

Two days later, Wilburn received a relief of duty status letter, signed by the acting fire chief. The letter explained that his relief of duty resulted from "an allegation of misconduct by you on or about July 21, 2010"—the date of the specimen collection—and would continue during the investigation.

The drug detection and deterrence policy provides that, "[i]f the GC/MS confirmatory test is positive, an employee may elect to have a second test performed on the original sample at his/her cost at a laboratory approved by the City." Wilburn requested the second test. In accordance with the policy, the MRO coordinated the retesting.

On August 5th, the second testing confirmed the positive result of the original test. In an August 6th memorandum entitled "Drug Test Result" and addressed to Wilburn, the MRO wrote:

> In compliance with the City of Houston Drug Policy on Drug Detection and Deterrence, you participated in a urinalysis test of drugs procedure on 7-21-2010. A split specimen (or aliquot) of that urine collection was forwarded to Quest Diagnostics, Lenexa, KS, for confirmation testing. The result of that confirmation testing has been reported. The [MRO] who has reviewed your confirmation laboratory drug test result has determined that your split specimen (or aliquot) was POSITIVE for Cocaine.

The MRO's signature appears at the end of the memo.

The policy dictates that "[a]n employee whose drug test result has been confirmed positive by GC/MS and determined to be positive by the MRO shall be indefinitely suspended/terminated." On August 19, the acting fire chief gave Wilburn a signed letter notifying him of the department's decision to indefinitely suspend Wilburn's employment and informing him of his right to appeal the decision. Wilburn appealed the decision to the Police Officers and Firefighters' Civil Service Commission of Houston, which, after an evidentiary hearing, upheld

6

the suspension. Wilburn then sought review in state district court under Chapter 143 of the Texas Local Government Code and the Texas Declaratory Judgment Act. TEX. LOCAL GOV'T CODE ANN. § 143.015 (West 2008); TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–37.009 (West 2008).

## Discussion

### I.      Summary Judgment Standard of Review

We review de novo the trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Under the traditional standard for summary judgment, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant a judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

Traditional summary judgment is proper only if the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). The motion must state the

7

specific grounds relied upon for summary judgment. *Id.* A plaintiff moving for a traditional summary judgment must conclusively prove all essential elements of its claim. *See Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

## II.    Compliance with Government Code Chapter 614

In his motion for summary judgment, Wilburn maintained that he is entitled to have the indefinite suspension reversed and to be reinstated because the City violated Chapter 614 of the Texas Government Code. That chapter mandates that a written copy of a complaint against a fire fighter, signed by the person alleging the misconduct, be served on the fire fighter "within a reasonable time after the complaint is filed." TEX. GOV'T CODE ANN. § 614.023(a). In addition, the statute prohibits the indefinite suspension or termination of a fire fighter's employment unless the complaint is investigated and evidence is found to prove the alleged misconduct. *Id.* § 614.023(c).

In granting the requested relief, the trial court agreed with Wilburn that the City's failure to comply with section 614.023 invalidated its disciplinary action against Wilburn. The City contends that the trial court erred in granting summary judgment because its implementation of the policy does not require a signed complaint or an investigation, making Chapter 614 inapplicable.

Leaving aside the question of whether Chapter 614 requires a signed complaint in all circumstances resulting in disciplinary action against employees

8

under its purview, we consider whether Wilburn satisfied his summary judgment burden. Wilburn's motion relies on the acting fire chief's responses to the following questions:

> Q. Did you or anybody under your command fill out a complaint alleging that Captain Wilburn violated the drug policy?
>
> A. No, sir.
>
> Q. Did you conduct an investigation to verify whether the results that the City brought here today are accurate?
>
> A. No sir, I did not.

The acting fire chief's responses, however, do not demonstrate whether the City complied with Chapter 614 in its implementation of the policy, which charges the MRO—not the fire chief—with the responsibility to determine whether the urinalysis test results provide a valid basis for disciplinary action. Before Wilburn received the letter of indefinite suspension on August 19, the City had provided him with two signed letters informing him of the complaint giving rise to that disciplinary action: the first from the acting department chief notifying Wilburn that he was on paid suspension pending an investigation of misconduct occurring on or about the date Wilburn provided the urine specimen, and the second from the MRO confirming that testing from both laboratories yielded a positive result for the presence of cocaine metabolite. These letters are some evidence that Wilburn received a copy of a signed complaint "within a reasonable time" after the basis for

the complaint arose—that is, when Wilburn provided the sample for random testing under the policy.

The summary judgment evidence also demonstrates that the MRO investigated the veracity and accuracy of the urinalysis test results before the department took any disciplinary action against Wilburn. Before confirming and reporting the positive test results to the department, the MRO questioned Wilburn about whether he had consumed any medication on or before the testing date that could have caused a false positive result. The MRO also testified before the Commission that he has confirmed the chain of custody for samples when warranted. The MRO coordinated the second test, ensuring that the specimen went to a different independent laboratory. The MRO thus complied with the investigatory procedures delineated in the policy. As a result, we hold that Wilburn failed to meet his summary judgment burden to conclusively establish that the City failed to furnish him with a written complaint.

## III. Evidence supporting the Commission's Decision

The City also urges us to reverse the trial court and render judgment affirming the Commission's decision because substantial evidence supports it. The City, however, did not move for summary judgment in the trial court. "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c);

10

*see also City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 675 (Tex. 1979) (discussing rule).

## Conclusion

We hold that Wilburn failed to satisfy his summary judgment burden. We therefore reverse the judgment of the trial court and remand the case for further proceedings.


Jane Bland
Justice

Panel consists of Justices Keyes, Higley, and Bland.