

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-12-00325-CV
_____

CITY OF LUBBOCK, TEXAS, APPELLANT

V.

CHRISTOPHER HENNSLEY, APPELLEE

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2011-559,814, Honorable Ruben G. Reyes, Presiding

September 12, 2013

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

The City of Lubbock (the City) appeals from an order granting Christopher Hennsley's (Hennsley) plea to the jurisdiction. Hennsley was terminated from the Lubbock Police Department and sought review of that termination before a hearing examiner. The latter ultimately modified the discipline levied to a fifteen-day suspension. This led the City to petition the district court for review of the examiner's decision. After suit was filed, Hennsley filed his plea to the jurisdiction, questioning the trial court's authority to entertain the proceeding. The trial court subsequently granted

the plea and dismissed the suit. The City contends, via two issues, that the dismissal was improper. We reverse and remand.

*Standard of Review*

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to the merit of the causes of action presented. *Bland Indep. School Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Through that plea, the movant challenges the trial court's subject matter jurisdiction to entertain the dispute. *Id.* Whether jurisdiction exists is a question of law, reviewed *de novo*. *See State Ex Rel. Dep't of Highways v. Gonzales*, 82 S.W.3d 322, 327 (Tex. 2002). But, like most things related to the law, what the answer is usually depends upon the facts involved, and those facts normally depend upon the status of the evidentiary record.

Next, in considering that record, the court is to accept as true all evidence favorable to the party seeking to invoke the court's jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 228 (Tex. 2004). So too must that jurist indulge in every reasonable inference, and resolve any doubts, against the movant. *Id.* At times, though, the operative jurisdictional facts are in dispute; that is, some evidence supports the existence of those operative facts while other evidence negates them. If the latter situation arises then the plea cannot be granted until the factfinder resolves the factual dispute. *Id.* at 227-28; *Bland Indep. School Dist. v. Blue*, 34 S.W.3d at 555.

The jurisdictional issue at bar arises from the application of section 143.057(j) of the Texas Local Government Code. It provides that:

> A district court may hear an appeal of a hearing examiner's award only on the grounds that the [examiner] was without jurisdiction or exceeded its jurisdiction or that the order was procured by fraud, collusion, or other unlawful means. An appeal must be brought in the district court having jurisdiction in the municipality in which the fire or police department is located.

2

TEX. LOC. GOV'T CODE ANN. § 143.057(j) (West 2008). In effort to establish jurisdiction, the City pled in its complaint that the hearing examiner exceeded its jurisdiction by applying chapter 614 of the Texas Government Code to the dispute and concluding that because the statute's requirements went unfulfilled, it would restrict its review to only some of the grounds proffered by the police chief as justification for Hennsley's termination. Via his plea to the trial court's jurisdiction, Hennsley argued to the contrary.

Per the section of chapter 614 at issue here,

> (b) Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee.
>
> (c) In addition to the requirement of Subsection (b), the officer or employee may not be indefinitely suspended or terminated from employment based on the subject matter of the complaint unless:
>
> (1) the complaint is investigated; and
>
> (2) there is evidence to prove the allegation of misconduct.

TEX. GOV'T CODE ANN. § 614.023(b) & (c)(1) & (2) (West 2012).[1] The record before us contains the following evidence pertinent to whether the requirements of § 614.023(b) and (c) were met.

---

[1]The City questions the applicability of Texas Government Code § 614.023 to the circumstances at bar. That is not a matter we need address given our ultimate disposition of the conflict. *See Treadway v. Holder,* 309 S.W.3d 780 (Tex. App.–Austin 2010, pet. denied) (holding via a split decision that the section applies to complaints initiated within the police department). We further note that section 143.052 of the Texas Local Government Code specifies a procedure for terminating policemen and other government employees whose employment is encompassed by a civil service agreement. TEX. LOC. GOV'T CODE ANN. § 143.052 (West 2008). Neither party discloses whether employment as an officer with the Lubbock Police Department is covered by such a civil service agreement. If it is, neither spoke about whether Hennsley was terminated for violating a civil service rule. If he was, then other notice requirements may have been applicable to or controlling of the situation at bar. *See id.* §143.052(c) (stating that "[i]f the department head suspends a fire fighter or police officer, the department head shall, within 120 hours after the hour of suspension, file a written statement with the commission giving the reasons for the suspension. The department head shall immediately deliver a copy of the statement in person to the suspended fire fighter or police officer").

Approximately five months before his termination, Hennsley received a copy of a memorandum drafted by Captain Hudgens and describing an incident involving Hennsley, another officer and various occupants of a vehicle.[2] An investigation of the incident ensued and resulted in the police chief issuing a letter of "charges" to Hennsley on June 21, 2010. The "charges" or accusations contained in the June missive included some of those encompassed within Hudgens' earlier memo and others apparently uncovered during the investigation. Furthermore, Hennsley was granted opportunity to review and respond to the June letter before any discipline was levied. The officer took advantage of that opportunity, drafted his reply to the accusations, and returned them to his superior. Within several days of that, the police chief ordered Hennsley's termination. The officer then appealed to a hearing examiner.

In considering the appeal, the hearing examiner opted not to assess the validity of all the accusations contained in the "charge" letter but only those that were in both Hudgens' memorandum and the "charge" letter. Apparently, he believed this to be the

---

[2]The memo consisted, in large part, of the following statements:

I believe there were serious use of force policy violations committed by Ofc. Christopher Hennsley, Ofc. Dustin Tucker and possibly by Ofc. Edward Day . . . I also believe that Ofc. Hennsley misrepresented the suspect's actions when he called out on the radio with the pursuit and in his crime report. I also believe that Ofc. Hennsley unnecessarily destroyed a citizens' property.

The pursuit came to a stop in the 4700 Block of Avenue Q. Ofcs. Hennsley and Day initiated a high risk stop and all of the occupants of the suspect vehicle stayed in the car. However, Ofc. Hennsley abandoned his position of cover and broke out the rear window of the suspect vehicle with his ASP baton. After several moments the occupants of the suspect vehicle began to exit the car. The first subject exited the car with his hands raised over his head and began slowly walking toward the curb. Ofc. Hennsley approached him and kicked him in the stomach area. The subject had not offered any resistance or indication that he was going to be aggressive. Ofc. Hennsley then forced the subject to the ground . . . . Ofc. Day holstered his pistol and approached the passenger side of the car and a male in a red and white striped shirt exited. The male can be heard shouting and appeared agitated but did not make an obvious visible aggressive move toward Ofc. Day. Ofc. Day kicked the subject in the midsection twice and Ofc. Hennsley then tazed him.

Due to the serious nature of the apparent policy violations I believe that a formal Internal Affairs investigation of the incident should be conducted.

4

just way of proceeding since those allegations outside the scope of the Hudgens' memo were not made known to Hennsley until he received the June missive from the police chief.[3] In other words, the examiner concluded that despite Hennsley being given the formal charge letter by the chief and opportunity to respond to those accusations, he would not consider all the allegations included therein. And, upon proceeding under that premise, the examiner modified Hennsley's discipline to a fifteen-day suspension.

In *City of Houston v. Wilburn*, No. 01-12-00913-CV, 2013 WL 3354182, 2013 Tex. App. LEXIS 8091 (Tex. App.–Houston [1st Dist.] July 2, 2013, no pet. h.), the court noted that

> Before Wilburn received the letter of indefinite suspension on August 19, the City had provided him with two signed letters informing him of the complaint giving rise to that disciplinary action: the first from the acting department chief notifying Wilburn that he was on paid suspension pending an investigation of misconduct occurring on or about the date Wilburn provided the urine specimen, and the second from the MRO confirming that testing from both laboratories yielded a positive result for the presence of cocaine metabolite.

*Id.* at *10-11. It continued by saying that "[t]hese letters are some evidence that Wilburn received a copy of a signed complaint 'within a reasonable time' after the basis for the complaint arose—that is, when Wilburn provided the sample for random testing under the policy." *Id.* at *11. Implicit in that observation is recognition that the "complaint" alluded to in § 614.023 need not consist of only one document. Instead, the existence of both letters, according to *Wilburn,* constituted evidence of compliance with the requirements of § 614.023. *Id.*

As previously illustrated, we have before us evidence of Hennsley being given both a memorandum containing some accusations being levied against him and an

_____

[3]The verbiage used by the examiner consisted of the following: "it would be unjust to impose discipline for charges that could have been, but were not, made known to Officer Hennsley in writing during the five months between the incident in question and the delivery of the Proposed Suspension Letter."

5

actual "charge" letter from the police chief containing all the allegations being levied. He not only viewed both but also received opportunity to rebut or respond to all the charges before being disciplined. Combining both documents here, as the *Wilburn* court did there, results in evidence of compliance with the statutory obligation in controversy. Hennsley was given a copy of all the complaints and charges against him (*i.e.* those of Hudgens and of the chief) as contemplated by § 614.023. The hearing examiner acknowledged as much in his findings but faulted the effort because he thought that the additional accusations in the June document should have been disclosed at some time or another during the investigation.

The foregoing is problematic for several reasons. First, the examiner's authority is derived from statute and quite constrained. *City of Waco v. Kelley*, 309 S.W.3d 536, 541-42 (Tex. 2010); *City of Pasadena v. Smith*, 292 S.W.3d 14, 20 (Tex. 2009). If his acts are not authorized by the statute or are contrary to it, they exceed his jurisdiction. *City of Pasadena,* 292 S.W.3d at 20*.* To the extent that Hennsley received notice of both potential wrongs encompassed within the Hudgen's memo and the more formal accusations within the chief's correspondence before being disciplined, the purported requirement of prior notice in § 614.023 was satisfied. Once that is done, nothing within that statute, or any other mentioned by the parties or found by this court, afford the examiner any type of discretion to pick and choose which accusations to review.[4] So, by opting to review only some of the accusations, the examiner exercised authority not given him; he effectively implemented his own rule granting him discretion not afforded by statute.

---

[4]Of note is Texas Local Government Code section 143.053(c). It states that: "(c) In a hearing conducted under this section, the department head is restricted to the department head's original written statement and charges, which may not be amended." TEX. LOCAL GOV'T CODE ANN. § 143.053(c) (West 2008). This suggests that the operative complaint is that of the chief or department head and upon which discipline was levied.

Second, by opting to forego consideration of all the accusations levied in the chief's missive (but allegedly omitted from Hudgen's memo) because they "could have been, but were not, made known to Officer Hennsley in writing during the five months between the incident in question and the delivery of the Proposed Suspension Letter," the examiner effectively instituted a time period within which notice of all the complaints or accusations must be given. Yet, § 614.023(b) says nothing of any specific time period. Nor does it impugn the period of time accorded by the chief here. So, it can reasonably be said that the examiner adopted his own rule regarding the quantum of prior notice that should be afforded, applied it retroactively to the situation at hand, and concluded that the quantum of notice was not enough. This is despite Hennsley garnering notice of all the charges before being disciplined and having time to respond to them. As stated by the Supreme Court in *City of Pasadena*, examiners lack power to create their own procedural rules. *City of Pasadena v. Smith*, 292 S.W.3d at 20. Because the hearing examiner did just that *viz* the matter of prior notice, he exceeded his jurisdiction.

We conclude that there exists evidence of the hearing examiner exceeding his jurisdiction. That evidence vested the trial court with jurisdiction over the City's petition seeking to review the hearing examiner's ruling. Thus, the order of the trial court granting Hennsley's plea to the jurisdiction of the court is reversed, and the cause is remanded.

Brian Quinn
Chief Justice

7