

# NUMBER 13-21-00123-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

WILLIAM BUCK, IN HIS OFFICIAL
CAPACITY AS FIRE CHIEF FOR THE
PORT OF HOUSTON AUTHORITY;
MARCUS WOODRING, IN HIS OFFICIAL
CAPACITY AS THE CHIEF PORT
SECURITY AND EMERGENCY
OPERATIONS OFFICER FOR THE PORT OF
HOUSTON AUTHORITY; ROGER
GUENTHER, IN HIS OFFICIAL
CAPACITY AS EXECUTIVE DIRECTOR
OF THE PORT OF HOUSTON
AUTHORITY; AND ROGER WALTER,
IN HIS OFFICIAL CAPACITY AS
DIRECTOR OF HUMAN RESOURCES
OF THE PORT OF HOUSTON
AUTHORITY,                                                      Appellants,

v.

STAN KOZLOWSKI, JASON HALL,
MIKE STALLINGS, JASON ROBERTS,
KYLE JORDAN, AND JUSTIN MEADOR,                    Appellees.

**On appeal from the 234th District Court
of Harris County, Texas.**

# MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Silva
Memorandum Opinion by Justice Silva**

Appellants William Buck, in his official capacity as Fire Chief for the Port of Houston Authority; Marcus Woodring, in his official capacity as the Chief Port Security and Emergency Operations Officer for the Port of Houston Authority; Roger Guenther, in his official capacity as Executive Director of the Port of Houston Authority; and Roger Walter, in his official capacity as Director of Human Resources of the Port of Houston Authority, appeal a temporary injunction enjoining them from taking disciplinary action against appellees Stan Kozlowski, Jason Hall, Mike Stallings, Jason Roberts, Kyle Jordan, and Justin Meador.

Appellants argue that appellees' claims, and by extension the temporary injunction, are moot. Alternatively, appellants argue the trial court's entry of a temporary injunction was clear error because: (1) appellees failed to show a probable right to relief; (2) appellees failed to show a probable, imminent, and irreparable injury; (3) the temporary injunction "[u]pends, [r]ather than [m]aintains, the [s]tatus [q]uo"; and (4) the trial court was limited to providing procedural due process relief to appellees and exceeded its authority by awarding substantive protections. We reverse and render in part and affirm in part.

Appellees are all firefighters for the Port of Houston Authority (Port Houston) and members of the International Association of Fire Fighters Local 1316 (Union), a labor union. Additionally, Kozlowski was the Union president, Hall was the vice president, Stallings was the treasurer, and Jordan was the secretary. In April 2020, firefighter Luke Beard reported to Union leaders, including Kozlowski, that training officer Robert Jones "promised that [Beard] would receive a promotion[] if he made [a] false complaint" of unfair treatment by Stallings. Union leaders therein reported the allegations to Port Houston human resources director, Walter. After meeting with Jones, Port Houston officials determined that a third-party investigator should investigate the allegations made by Beard, and also investigate allegations of misconduct that Jones made against appellees. Port Houston hired DeDe Church & Associates (Church) to conduct the investigation. Church investigator Sandra Lauro interviewed multiple witnesses within Port Houston and ultimately generated a report that included her findings.

Lauro determined that there was sufficient evidence to support some of Jones's allegations of misconduct. Specifically, Lauro found sufficient evidence to support an allegation that several appellees convinced rookies to perform a faux "radar calibration" as a method of hazing. Lauro also found sufficient evidence to support Jones's allegation that Kozlowski, Stallings, Hall, Jordan, and Meador made derogatory remarks relating to Jones's disability caused by an injury that he sustained in the military. Lauro also

---

[1] This case is before this Court on transfer from the First Court of Appeals in Houston pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

concluded that "[t]he investigation does not support that [Jones] pressured [Beard] to file a false or frivolous hostile work environment complaint against [Stallings] in order to get [Stallings] or others fired."

Following the investigation and report, Kozlowski, Hall, Stallings, and Roberts were terminated on July 7, 2020. On July 11, 2020, Jordan and Meador were disciplined but were not terminated. Jordan and Meador both received a written "disciplinary notice" that stated what conduct Port Houston found to be unacceptable. The written notices were signed by a supervisor and Buck. According to appellants, the terminated employees "were verbally informed of the reasons for their terminations at the time of their terminations." On July 22, 2020, Walter sent an email to the terminated employees which included the reasons for their termination and a copy of Port Houston's dispute resolution process policy. All six appellees sought committee review of the employment actions.

Appellees requested a copy of the Church report prior to the review hearing; however, Walter declined to provide a copy, stating that Port Houston was seeking guidance from the Office of the Attorney General (OAG) on what, if any, portion of the report could be released.[2] Originally, Hall asked that the review hearing be delayed until the OAG ruled on the report, to which Walter agreed. However, Hall ultimately asked that the review hearing be held before a ruling was made.

---

[2] In their reply brief, appellants assert that the OAG "ultimately agreed with Port Houston, in part, and instructed that the Port must withhold certain information in response to an Open Records Request based on common-law privacy." Appellants direct us to an exhibit to their petition in another suit, *Port of Houston Authority v. Ken Paxton, Attorney General of Texas*, in the 250th district court in Travis County, as a place where the opinion can be found. However, appellants have not provided this Court a copy of the opinion, and it is not found in the record before us. Instead, appellants requests "that [this] Court take judicial notice of this public finding." Because the opinion is not part of the record before us, we decline to do so. *See* TEX. R. APP. P. 34.1.

4

On September 17, 2020, the committee held a review hearing where appellees contested the bases for the employment actions with statements and evidence. The committee upheld the terminations.[3] Appellees appealed the committee's decision to Guenther. Guenther affirmed the committee's decision on October 13, 2020.

In November 2020, appellees filed suit in federal court alleging, inter alia, that the terminated employees did not receive the notices required by Texas Government Code §§ 614.022–.023. *See* TEX. GOV'T CODE ANN. §§ 614.022 (requiring a complaint be in writing and signed by the person making the complaint before it may be considered by the head of a fire department), 614.023 (requiring signed complaint be provided to complained-of employee "within a reasonable time after the complaint is filed" and before the imposition of discipline). Appellees further alleged that they were terminated for engaging in protected speech and actions as Union members and officials. *See* TEX. LAB. CODE ANN. §§ 101.001 (establishing the right to organize labor unions), 101.052 (prohibiting denial of employment based on membership status in a labor union), 101.301 (prohibiting interference with the right to work based on membership status in a labor union); TEX. GOV'T CODE ANN. § 614.004 (prohibiting denial of public employment based on union membership or nonmembership). The state law claims in the federal suit were dismissed without prejudice for want of subject matter jurisdiction. *See* U.S. CONST., amend. XI. However, appellees' federal claims remained live.

Appellees were provided a copy of the Church report through their counsel on February 24, 2021. On March 2, 2021, Port Houston reinstated the terminated employees

---

[3] No record of the review hearing was provided to this Court.

to their pre-termination positions with corresponding compensation and benefits but placed them on paid administrative leave to provide them the notice required by Chapter 614. *See* TEX. GOV'T CODE ANN. §§ 614.022–.023. Appellees filed the current suit in the trial court on March 8, 2021, seeking a declaratory judgment, a temporary restraining order, a permanent restraining order, a temporary injunction, a permanent injunction, and mandamus. Appellees alleged that appellants' disciplinary actions against them constituted "illegal, *ultra vires* actions by state officials."

The trial court granted appellees' request for a temporary injunction, enjoining appellants

> from taking disciplinary action against [appellees] related to the complaints, which formed the basis for the termination of Kozlowski, Hall, Stallings, and Roberts on or about July 7, 2020[,] and the suspension of Meador and Jordan because [appellants] failed to provide [appellees] with the written complaint within a reasonable time after that complaint was filed.

The temporary injunction further enjoined appellants

> from taking any disciplinary action against [appellees] related to their union activity, including representing union members in investigations or disciplinary actions, as protected by Tex[as] Labor Code §§ 101.001, 101.052, and 101.301[,] and Texas Government Code § 617.004.

In support of its temporary injunction, the trial court found that the "[appellees] have shown a probable right to declaratory and injunctive relief" and "will suffer imminent and irreparable harm, including the loss of their rights and obligations and employment. Additionally, money damages are unavailable in *ultra vires* actions." (Emphasis added)

This interlocutory appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4).

6

## II.    STANDARD OF REVIEW

A trial court's order granting or denying a temporary injunction is reviewed for abuse of discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). "We limit the scope of our review to the validity of the order, without reviewing or deciding the underlying merits, and will not disturb the order unless it is 'so arbitrary that it exceed[s] the bounds of reasonable discretion.'" *Henry v. Cox*, 520 S.W.3d 28, 33–34 (Tex. 2017) (quoting *Butnaru*, 84 S.W.3d at 204) (internal footnote and citation omitted). "No abuse of discretion exists if some evidence reasonably supports the [trial] court's ruling." *Id.* at 34. "Under this standard, we draw all legitimate inferences from the evidence in a manner most favorable to the trial court's ruling." *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 838 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.). As the factfinder, the trial court is the sole judge of the credibility of the witnesses and the weight to give their testimony; it may choose to believe one witness and disbelieve another. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

## III.    APPLICABLE LAW

### A.    Temporary Injunction

A temporary injunction is an extraordinary remedy which serves the purpose of preserving the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204. "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id.* An order granting a temporary injunction shall: (1) set forth the reasons

for its issuance; (2) be in specific terms; and (3) describe in reasonable detail the act or acts sought to be restrained, without reference to the complaint or other document. TEX. R. CIV. P. 683.

To establish a probable right to relief, a party must allege a cause of action and present evidence tending to sustain it; the party need not prove that it will prevail at final trial. *Savering v. City of Mansfield*, 505 S.W.3d 33, 39 (Tex. App.—Fort Worth 2016, pet. denied). "An injury is irreparable if there is no adequate remedy at law; if for example, a prevailing applicant could not be compensated adequately in damages, or if damages cannot be measured by any certain pecuniary standard." *Benefield v. State*, 266 S.W.3d 25, 30 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing *Butnaru*, 84 S.W.3d at 204).

"[T]he remedy for a denial of due process is due process." *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 933 (Tex. 1995). Parties who bring claims for *ultra vires* acts are entitled to prospective injunctive relief, rather than retrospective monetary relief, measured from the date of the injunction. *City of Houston v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018). "Plaintiffs in *ultra vires* suits must 'allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act.'" *Id.* (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)). "'Ministerial acts' are those 'where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.'" *Id.* (quoting *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015)).

8

**B.    Notice of Complaint**

Before the head of a fire department may consider a complaint, it must be in writing and signed by the person making the complaint. TEX. GOV'T CODE ANN., § 614.022. A complaint against a firefighter "shall be given to the officer or employee within a reasonable time after the complaint is filed." *Id.* § 614.023(a). No disciplinary action may be taken against an employee or officer unless a copy of the signed complaint is given to the officer. *Id.* § 614.023(b). Further, an employee may not be indefinitely suspended or terminated based on the complaint unless the complaint is investigated and there is evidence to prove the allegation of misconduct. *Id.* § 614.023(c).

"These statutes provide 'covered employees with procedural safeguards to reduce the risk that adverse employment actions would be based on unsubstantiated complaints.'" *Colorado County v. Staff*, 510 S.W.3d 435, 443 (Tex. 2017) (quoting *Turner v. Perry*, 278 S.W.3d 806, 823 (Tex. App.—Houston [14th Dist.] 2009, pet. denied)). Even if the covered employee is terminable at will, the statute applies whenever the decision to terminate is based on a complaint of misconduct. *Id.* at 446. "[T]he statutory process helps ensure that cause-based removals of a specified nature bear a modicum of proof and that the affected employee has notice of the basis for removal." *Id.* Providing notice to the affected employee allows the employee to address and defend against the allegations. *Id.* at 447. "In sum, Chapter 614, Subchapter B does not preclude termination of employment absent compliance with the statutory process, but when allegations of misconduct are serious enough to warrant termination—independently or as a component of cumulative discipline—a complaint must be filed, investigated, and substantiated." *Id.*

9

The statute does not set out any requirements for the contents of a complaint or establish standards for specificity. *Id.* at 454. Nor does the statute require that the person making the complaint be the victim of the alleged misconduct. *Id.* at 451. The statute does not require the employee be offered an opportunity to be heard before disciplinary action may be taken. *Id.* at 454. "Unlike [§§] 614.023(a) and (c), there is neither an express nor implied temporal limitation on presentment of a complaint in relation to the imposition of discipline." *Id.* "Under Chapter 614, Subchapter B, a disciplinary action may follow a signed complaint, or information that has been reported may prompt an internal investigation that generates a report sufficient to satisfy the statutory requirements." *Id.* at 455. Whether presentment of a complaint contemporaneous with the imposition of discipline is "within a reasonable time after the complaint is filed" is fact specific. *See id.* at 454 (quoting Tex. Gov't Code Ann. §§ 614.022–.023(a)-(b)).

## C. Labor Union Protections

"All persons engaged in any kind of labor may associate and form trade unions and other organizations to protect themselves in their personal labor in their respective employment." Tex. Lab. Code Ann. § 101.001. "A person may not be denied employment based on membership or nonmembership in a labor union." *Id.* § 101.052. "The right of a person to work may not be denied or abridged because of membership or nonmembership in a labor union or other labor organization." *Id.* § 101.301(a). This protection extends to public employment. Tex. Gov't Code Ann. § 617.004.

## IV. MOOTNESS

By their first issue, appellants argue appellees' claims are moot because they have

been reinstated to their positions. Appellees, in part, argue that Port Houston restored the terminated employees before they filed suit and it is thus, not a change that occurred within the court proceeding. Appellees further argue that Port Houston could still take disciplinary action against them and thus, their claims are not moot. In furtherance of this point, appellees assert that because a written and signed complaint was not provided to them in a reasonable time, Port Houston cannot cure the deficiency "[w]ithout a time-machine," and "additional 'process' cannot cure the prejudice and harm caused by months of hiding and concealing the report."[4]

## A.     Applicable Law

"Standing is a constitutional prerequisite to maintaining suit . . . ." *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001). "For a plaintiff to have standing, a controversy must exist between the parties at every stage of the legal proceedings, including the appeal." *Id.* at 184 (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)). "If a case becomes moot, the parties lose standing to maintain their claims." *Id.* A court lacks jurisdiction and must dismiss a case where the plaintiff lacks standing to bring any of his claims. *Heckman v. Williamson County*, 369 S.W.3d 137, 151 (Tex. 2012). "A court can— and if in doubt, must—raise standing on its own at any time." *Meyers v. JDC/Firethorne,*

---

[4] Appellees claim that

Port Houston have [sic] prejudiced [appellees]' defense against these stale complaints because (1) [appellants] have since terminated Robert Jones, the key witness against [appellees]; (2) [Port Houston] has now determined that Jones was not credible regarding some allegations made to [Port Houston], as confirmed by Chief Buck's testimony; (3) the length of time since the original report detrimentally impacts [appellees]' ability to evaluate the allegations; (4) the process has been tainted because Port [Houston] [l]eaders in the chain of command have already made the decision upholding their termination based on the complaint; and (5) [appellees] have already suffered months of lost wages that are not recoverable for the *ultra vires* conduct.

11

*Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993)).

"Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests." *Heckman*, 369 S.W.3d at 162. If a court determines a case has become moot, it "must vacate any order or judgment previously issued and dismiss the case for want of jurisdiction." *Id.* "[A] declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the declaration will resolve the controversy." *FLCT, Ltd. v. City of Frisco*, 493 S.W.3d 238, 251 (Tex. App.—Fort Worth 2016, pet. denied) (citing Tex. Civ. Prac & Rem. Code Ann. § 37.008).

An exception to mootness exists where claims are "capable of repetition, yet evading review." *Williams*, 52 S.W.3d at 184; *Tex. A & M Univ. Kingsville v. Yarbrough*, 347 S.W.3d 289, 290 (Tex. 2011). "To invoke the exception, a plaintiff must prove that: (1) the challenged action was too short in duration to be litigated fully before the action ceased or expired; and (2) a reasonable expectation exists that the same complaining party will be subjected to the same action again." *Williams*, 52 S.W.3d at 184; *Yarbrough*, 347 S.W.3d at 290.

## B. Analysis

### 1. Jordan and Meador

We begin by noting that appellees consist of two classes of plaintiffs: (1) the terminated employees (Kozlowski, Hall, Stallings, and Roberts); and (2) the suspended employees (Jordan and Meador). This distinction is important to our analysis. When Jordan and Meador received their suspensions, they were both provided a "Disciplinary

12

Notice to Employee of Port of Houston Authority." The notices are signed by their supervisor and the fire chief. Jordan's notice states:[5]

> An investigation conducted by an outside investigator found that there was credible corroboration to support that on more than one occasion you called Mr. Jones derogatory nicknames relating to an injury [redacted] which occurred when he was active[-]duty military.

> You violated Port Houston policy which prohibits harassment, including harassment based on physical or mental disability. You engaged in prohibited behavior which includes wrongful verbal conduct.

Meador's notice states:

> An investigation conducted by an outside investigator substantiated that you were involved in the "rookie radar calibration" prank played on [another firefighter], in which photos of him were taken with a metal cookie sheet taped around [redacted] and metal objects placed in each hand while facing the fireboat radar. Photos of the hazing were circulated.

> The investigation also found that there was credible corroboration to support that on more than one occasion you called Mr. Jones derogatory nicknames relating to an injury [redacted] which occurred when he was active[-]duty military.

> You violated Port Houston policy which prohibits harassment, including harassment based on physical or mental disability. You engaged in prohibited behavior which includes wrongful verbal conduct. The posting and distribution of photos was also a violation of our visual conduct policy.

As the Texas Supreme Court noted in *Staff*, §§ 614.022 and 614.023 do not "set forth required contents for a 'complaint' or establish particular standards for specificity." *See Staff*, 510 S.W.3d 454; *see also* TEX. GOV'T CODE ANN. §§ 614.022–.023. Further, the written complaint need not come from "the victim of the misconduct." *See Staff*, 510 S.W.3d at 453. In *Staff*, the court held that a "Deficiency Notice" signed by an officer's supervisor following an internal investigation prompted by a complaint about the officer's

---

[5] The redactions in the notices appear in the original record.

13

behavior towards civilians from the county attorney "serve[d] the 'overarching statutory purposes'" of Chapter 614. *See id.* at 454 (quoting *Lang v. Tex. Dep't of Pub. Safety*, No. 03-12-00497-CV, 2014 WL 3562738, at *9 (Tex. App.—Austin July 18, 2014, no pet.) (mem. op.)).

Jordan and Meador's claims are nearly identical to that of the plaintiff's in *Staff*. *See id.* The disciplinary notices received by Jordan and Meador "serve[] the 'overarching statutory purposes'" of "(1) ameliorating the risk that disciplinary action might be based on frivolous complaints and (2) helping to ensure an affected employee has sufficient notice of the charges to defend against the allegations." *See id.* at 447, 454. Jordan and Meador were notified of the behavior that constituted the alleged misconduct, as well as the policies the alleged misconduct violated. *See id.* at 454–55. Further, both were provided "opportunit[ies] to marshal any evidence bearing on the matters identified" in the disciplinary notice. *See id.* at 455. Finally, as here and in *Staff*, the employees received copies of the notice at the time the disciplinary action was taken. *See id.* at 454.

Jordan and Meador argue that the disciplinary notices they received did not satisfy Chapter 614's requirements because they were not "signed by the person making the complaint." *See* TEX. GOV'T CODE ANN. §§ 614.022(2), 614.023. Jordan and Meador assert their claim is distinguishable from *Staff* in that *Staff* determined the complaint signed by a supervisor satisfied the requirements because the supervisor personally reviewed body camera footage and witnessed *Staff*'s behavior. *See Staff*, 510 S.W.3d at 439–40. According to Jordan and Meador, only the Church report or a signed complaint from Jones would satisfy Chapter 614's requirement. However, as Jordan and Meador

14

acknowledge in their brief, in *Staff* the complaint originated from the county attorney's office, which prompted an internal investigation. *See id.* at 439. The court acknowledged that Chapter 614 may be satisfied when an internal investigation generates a sufficient report. *See id.* at 455. Appellees provide no case law standing for the proposition that Chapter 614 requires investigative reports, such as the Church report, be provided to employees before disciplinary actions, and we find none. *See* TEX. GOV'T CODE ANN. § 614.023. Rather, *Staff* requires a complaint that satisfies the overarching statutory purposes of Chapter 614. *See Staff*, 510 S.W.3d at 454–55.

Therefore, as it relates to violations of Chapter 614, no live controversy exists between Jordan and Meador and appellants. *See Williams*, 52 S.W.3d at 184; TEX. GOV'T CODE ANN. § 614.023. Thus, Jordan and Meador's claims are moot, and they lack standing to maintain their claims. *See Williams*, 52 S.W.3d at 184. There is no evidence that "a reasonable expectation exists that the same complaining party will be subjected to the same action again" such that would allow us to review their claims despite being moot.[6] *See id.*; *Yarbrough*, 347 S.W.3d at 290. Accordingly, we sustain appellants' first issue as it relates to Jordan and Meador's claims under Texas Government Code §§ 614.022–.023. *See* TEX. GOV'T CODE ANN. §§ 614.022–.023

### 2. Kozlowski, Hall, Stallings, and Roberts

Unlike the suspended employees, the terminated employees did not receive a signed disciplinary complaint when their employment was terminated. Rather, they "were verbally informed of the reasons for their terminations at the time of their terminations."

---

[6] Neither Jordan nor Meador testified at the temporary injunction hearing.

Additionally, about two weeks after their termination, they each received an email including a broad description of the reason or reasons for their termination. For example, Hall was notified that he "[was] found to have pressured an employee to disclose information about an injury and made derogatory comments regarding the injury." Kozlowski was notified that he "[was] found to have pressured an employee to disclose information and evidence of an injury, made derogatory comments about an employee's injury and veteran status, and participated in at least one hazing event." Stallings and Roberts were provided similar notices for their alleged misconduct. The emails included the signature block of Walter.

Although an investigation was conducted prior to Kozlowski, Hall, Stallings, and Roberts's termination in accordance with § 614.023(c), they were not provided a written and signed copy of a complaint in accordance with § 614.023(a) and (b). *See* TEX. GOV'T CODE ANN. § 614.023. However, appellees were provided a signed copy of the Church report in February 2021, and reinstated to their positions, although immediately placed on administrative leave, in March 2021. Thus, we must consider whether reinstating the terminated employees to provide them the complained-of notice rendered their claims moot. *See Williams*, 52 S.W.3d at 184. We must conduct our inquiry "without reviewing or deciding the underlying merits." *See Henry*, 520 S.W.3d at 33–34.

Appellees argue that § 614.023's requirements are substantive, rather than a procedural safeguard. By extension, appellees assert that appellants cannot cure their substantive defect because they cannot provide a signed copy of a complaint to appellees within a reasonable time. In other words, appellees contend that because they did not

16

receive a signed complaint within a reasonable time, they can never be punished for the alleged misconduct in the underlying Church report. Finally, appellees argue their request was for an injunction prohibiting disciplinary action against them, rather than reinstatement, so their claims are not moot.

In *Staff*, the Texas Supreme Court identified §§ 614.022–.023 as "procedural safeguards" designed to ameliorate disciplinary actions on frivolous complaints and ensure the affected employees have sufficient notice to defend against the complaints. *See Staff*, 510 S.W.3d at 446–48. Generally, the remedy for a deprivation of due process is due process. *See Than*, 901 S.W.2d at 933. Here, the process that appellees were allegedly deprived of was being provided a signed complaint within a reasonable time after a complaint was made and before, or contemporaneously with, any disciplinary action taken against them. *See* TEX. GOV'T CODE ANN. § 614.023(b). As the court noted in *Staff*, there may be a situation in which "presentment of a complaint contemporaneously with the imposition of discipline may not be 'within a reasonable time after the complaint is filed.'" *Staff*, 510 S.W.3d at 454. Here, appellants did not present a complaint contemporaneously with the imposition of discipline—the terminated appellees did not receive the Church report until approximately 230 days after the discipline, 250 days after the report was prepared and signed, and over 300 days after the initial complaint. *See id.* Because the question as to whether the complaint was provided within a reasonable time is fact specific, the parties should be afforded an opportunity to present arguments and evidence in a final hearing for the factfinder to make that determination. *See id.*

17

Appellees allege that Port Houston's failure to comply with Chapter 614 prejudiced them in multiple ways. In particular, appellees argue that "the length of time since the original investigation makes it more difficult to present their case," "the process has been tainted because" Port authorities have already upheld their termination through the appellate process, and they "have already suffered months of lost wages that are not recoverable for *ultra vires* violations." Whether appellees have been irreparably damaged by a lack of required process should likewise be determined at a final hearing. *See id.*; *Henry*, 520 S.W.3d at 33–34.

Appellants argue that *Than* is instructive to this case. *See Than*, 901 S.W.2d at 933. In *Than*, a medical student was disciplined after he was accused of cheating on a board exam in surgery. *Id.* at 928. During the disciplinary hearing, the hearing officer requested to view the exam room in which Than sat during the exam. *Id.* Although the university's representative accompanied the hearing officer to view the exam room where Than sat, Than was not allowed to be present with the hearing officer despite his request to do so. *Id.* Based on the hearing officer's recommendation, Than was expelled from the university. *Id.* Thereafter, Than followed the appeal process and ultimately sought and obtained a permanent injunction requiring the university to permit him to complete his medical education. *Id.* at 929. The Texas Supreme Court held that the trial court's permanent injunction exceeded the proper remedy. *Id.* at 934 (striking requirement that the university issue Than a diploma and treat him as any other student who graduated in good standing). Instead, the court modified the permanent injunction to remove Than's failing grade and record of the expulsion and concluded that "whether [the university]

18

issues Than a diploma should be determined by university officials after notice and hearing." *Id.* The court cautioned other courts to "tread lightly in fashioning remedies for due process violations" in order to avoid "unwarranted judicial interference with the educational process." *Id.*

Appellants additionally rely on *Orr v. Univ. of Tex. at Austin*, No. 03-14-00299-CV, 2015 WL 5666200, at *1 (Tex. App.—Austin Sept. 23, 2015, no pet.) (mem. op.), an unpublished case. In that case, Orr, a doctoral graduate, had her degree revoked for "scientific misconduct concerning her degree." *Id.* Orr filed a suit against the university, alleging it violated the due course of law of the Texas Constitution, seeking a temporary and permanent injunction preventing the university from revoking her degree and violating her constitutional rights. *Id.*; *see* TEX. CONST. art. I, § 19. The same day, "Orr and [the university] entered into a Rule 11 agreement specifying that [the university] would restore Orr's degree 'subject to further discussions regarding additional process.'" *Orr*, 2015 WL 5666200, at *1; *see* TEX. R. CIV. P. 11. The court of appeals determined Orr's suit became moot because "Orr's degree is intact, and any alleged injury based on the new proceeding remains contingent"; in other words, any further claims by Orr were not ripe. *Orr*, 2015 WL 5666200, at *3 (citing *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011)). The court additionally noted that "Orr's pleadings [did] not identify a 'legally cognizable interest' in obtaining any prospective relief as to [the university's] past investigation and decision-making process." *Id.*

Unlike *Than*, the present case involves a legislatively mandated process for disciplinary actions against fire department employees following a complaint. *See* TEX.

19

GOV'T CODE ANN. §§ 614.022–.023; *Than*, 901 S.W.2d at 934 (concluding the injunctive relief "represent[ed] unwarranted judicial interference with the educational process"). Further, in contrast with *Orr*, appellees have identified a legally cognizable interest in obtaining prospective relief as to Port Houston's past process. *See Orr*, 2015 WL 5666200, at *3. Appellants argue that the trial court's temporary injunction modifies the at-will nature of the terminated employees' employment, which they assert is contrary to the ruling in *Staff*. *See Staff*, 510 S.W.3d at 446. However, such a characterization is inaccurate—the terminated employees remain at-will employees, but appellants are required to comply with Chapter 614 "before an employee may be permanently encumbered by a damaging discharge record." *See id.*; TEX. GOV'T CODE ANN. §§ 614.022–.023. Accordingly, we conclude that the terminated employees' claims under Chapter 614 are not moot. Appellants' first issue as it relates to the terminated employees is overruled.

### 3. Violations of the Labor Code

In addition to their claims under Chapter 614, appellees seek declaratory judgments and injunctions relating to disciplinary action for their membership with the Union. *See* TEX. LAB. CODE ANN. §§ 101.052, 101.301; TEX. GOV'T CODE ANN. § 617.004. Appellants' argument that appellees' claims are moot focuses solely on appellees' claims under Chapter 614 and does not address appellees' claims that Port Houston's actions against them were based on their membership and leadership in the Union. The trial court's temporary injunction prohibited appellants from taking disciplinary action against all appellees "related to their union activity, including representing union members in

20

investigations or disciplinary actions." Because the related provisions of the labor and government codes do not have temporal limitations, appellees' claims are not moot. *See Heckman*, 369 S.W.3d at 162.

### 4. Summary

We sustain appellants' first issue as it relates to Jordan and Meador's Chapter 614 claims, but overrule it as it relates to Kozlowski, Hall, Stallings, and Roberts. We further conclude that appellees' claims regarding labor union protections are not moot. *See id.*

## V. TEMPORARY INJUNCTION

By their second issue, appellants argue that the trial court's entry of a temporary injunction was clear error because "[appellees] failed to satisfy the standards for entitlement to injunctive relief." By several sub-issues, appellants argue that (1) appellees did not show a probable right to relief; (2) appellees did not show a probable, imminent, and irreparable injury; (3) the trial court's temporary injunction "[u]pends, [r]ather than [m]aintains, the [s]tatus [q]uo;" and (4) the trial court exceeded its authority by providing substantive relief where only procedural protections were appropriate.

## A. Probable Right to Relief

In support of their first sub-issue, appellants lodge three subpoints arguing that appellees failed to show a probable right to relief. We address them in turn.

### 1. Evidence of a Complaint

Appellants argue that appellees have not shown a probable right to recovery, a necessary finding before a court may enter a temporary injunction. *See Henry*, 520 S.W.3d at 34. In support of their argument, appellants argue that Chapter 614 does not

apply to this situation because "[t]here [is] no evidence of an applicable 'complaint' which [appellees] failed to receive." Because we have already concluded the suspended employees received the necessary notice as it relates to Chapter 614, our analysis focuses on the terminated employees.

Appellants cite two federal cases for the proposition that Chapter 614 only applies to third-party alleged victims, rather than internal investigations. *See Gehring v. Harris County*, Civ. A. H-15-0726, 2016 WL 269620, at *11 (S.D. Tex. 2016); *Jackley v. City of Live Oak*, SA-08-CA-0211-OG, 2008 WL 5352944, at *5 (W.D. Tex. 2008). However, as appellants concede, "[t]he *Staff* court discussed the issue extensively, but failed to resolve the issue one way or the other." *See Staff*, 510 S.W.3d at 450, 455. Appellants further argue that the *Staff* court determined that the circumstances before it "did not require the employer to provide any 'complaint' to the employee." Appellants also assert that the court "held that the County was never obligated to provide a complaint to the employee/plaintiff before terminating him."

It is important to note that, as previously discussed, the *Staff* court held that the complaint *may* be provided contemporaneously with the implication of disciplinary action, not that the County was never obligated to provide a complaint to the employee before terminating him. *See id.* at 454. Indeed, the court acknowledged that a situation may arise where contemporaneous presentment of the complaint with the disciplinary action was not "within a reasonable time after the complaint is filed." *See id.* Additionally, the court did not hold that the County was not required to provide a "complaint" to the employee. *See id.* Rather, the court held the "requirement was satisfied by the Deficiency Notice [the

22

supervisor] signed." *Id.*

The primary issues discussed in *Staff* were what constitutes a "complaint" and whether it must come from "the 'victim' of the alleged misconduct." *Id.* at 448–51. The court held that "'complaint' ordinarily means an expression of dissatisfaction, including an allegation made by one against another." *Id.* at 448–49. Here, Jones made an allegation against the appellees that they had engaged in harassment and hazing. *See id.* Jones's allegations meet the definition of complaint as applied to Chapter 614. *See id.*

Although two federal courts have determined that nothing in Chapter 614 indicates it applies to internal complaints, some of our sister courts have held the opposite. *See Paske v. Fitzgerald*, 499 S.W.3d 465, 475 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("[A] 'complaint' may originate from either outside a law enforcement agency or from within it."); *Treadway v. Holder*, 309 S.W.3d 780, 784 (Tex. App.—Austin 2010, pet. denied) ("[A] 'complaint' for purposes of Subchapter B is any allegation of misconduct that could result in disciplinary action."). Because this case has been transferred from the First Court of Appeals in Houston, we are bound by its precedent. TEX. R. APP. P. 41.3. Accordingly, applying the plain meaning of the statute, we conclude Chapter 614 applies to any complaint against a covered employee. *See Paske*, 499 S.W.3d at 475.

### 2.    Compliance with Chapter 614

Appellants then argue that if Chapter 614 does apply, they complied with its requirements. Appellants assert that "on July 22, 2020, the [t]erminated [appellees] were each provided a written, signed notice of the specific reasons for their terminations." Appellants point to the emails sent to the terminated appellees by Walter as evidence

23

they received the necessary notice. However, the emails sent by Walter only provide general information to the terminated appellees, such as they "made derogatory comments about an employee's injury and veteran status" or "participated in at least one hazing event." The emails do not contain any specific details, such as which employee the terminated appellees made the alleged comments about, who the comments were made to, or when the comments were made. Nor does the notice provide specific information related to the hazing event. *See Staff*, 510 S.W.3d at 454. Appellants also argue that "[t]he [t]erminated [appellees] already knew the reasons for their terminations, because they had been told the reasons during their termination meetings on July 7, 2020." However, § 614.023(a), (b) require the affected employees receive a *written* and signed copy of a complaint, not verbal disclosure of the reasons for adverse employment action. *See* Tex. Gov't Code Ann. § 614.023(a), (b). Accordingly, we conclude the trial court could have determined that the terminated appellees demonstrated a probable right relief on their claim that appellants failed to comply with the requirements of Chapter 614. *See Butnaru*, 84 S.W.3d at 204; *Henry*, 520 S.W.3d at 34.

### 3. Labor Union Protections

Finally, appellants argue that the appellees failed to show that Port Houston's disciplinary actions against them were based on their membership in the Union. *See* Tex. Lab. Code Ann. §§ 101.052, 101.301; Tex. Gov't Code Ann. § 617.004. Instead, appellants assert that the activities appellees cite as protected[7] "occurred over the course

---

[7] Some of the "protected acts" include advocating for a change to the shift schedule for all firefighters, increasing firefighter pay, and representing firefighters in disciplinary proceedings.

24

of roughly five years, during which they successfully maintained their employment with Port Houston." According to appellants, appellees were "disciplined or terminated based on findings by a third-party investigator that they engaged in serious misconduct, including harassment and hazing of other employees."

When reviewing the trial court's temporary injunction, we will not find an abuse of discretion so long as "some evidence reasonably supports the court's ruling." *Henry*, 520 S.W.3d at 34. Appellees presented evidence that each of them was members in the Union, with all the terminated employees serving in an officer capacity within the Union. Additionally, according to Kozlowski, Buck left the Union prior to being appointed Chief because "those promotions are political" and Buck "felt that upper management wouldn't approve" his promotion if he were in the Union. Kozlowski testified that in his role as Union president, he routinely received pushback from Buck when advocating for changes on behalf of Union members. Finally, Kozlowski testified that Buck approved of Jones's offer of a promotion to Beard if Beard made a false complaint against Stallings. According to Kozlowski, Stallings was active in seeking changes on behalf of the Union and its members.

As the sole judge of the weight of the evidence and credibility of the witnesses, the trial court was free to believe Kozlowski's testimony and disregard the findings within the Church report. *See Wilson*, 168 S.W.3d at 816. As such, appellees produced "some evidence" that appellants' reasons for disciplinary actions were pretextual and instead based on appellees' membership and participation in the Union. *See Henry*, 520 S.W.3d at 34.

25

**B.    Probable, Imminent, and Irreparable Injury**

By their second sub-issue, appellants argue that appellees have not shown a probable, imminent, and irreparable injury because "the [t]erminated [appellees] have been promised that very notice [of which they complain] before any final decision regarding their employment with Port Houston is made." Appellants further argue that appellees "did not present any evidence supporting their allegation that they will be terminated or disciplined because of alleged union activity." Finally, appellants argue that appellees' federal suit seeks monetary damages for alleged violations of First Amendment rights of free speech and association, demonstrating that there is an adequate remedy at law. *See* 42 U.S.C. § 1983.

Addressing appellants' claim that appellees' federal suit may include monetary damages, which in turn provides "adequate relief," we note that the only available remedy for *ultra vires* acts is prospective injunctive relief. *See Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d at 576; *Heinrich*, 284 S.W.3d at 368–69; *see also Butnaru*, 84 S.W.3d at 204 ("To obtain a temporary injunction, the applicant must plead and prove . . . a probable, imminent, and irreparable injury in the interim."). Further, a party alleging *ultra vires* acts must be brought against the state actors in their official capacity, as opposed to the governmental unit. *See Heinrich*, 284 S.W.3d at 373. An *ultra vires* suit "is, for all practical purposes, against the state." *See id.* Appellees' § 1983 claims are against Buck and Woodring in their individual capacity for retroactive damages, not in their official capacity or against Port Houston. Accordingly, appellees' suit for money damages against Buck and Woodring individually does not provide "adequate relief" to appellees' for violations

of Chapter 614 or the labor code such that would obviate the ability for appellees to obtain temporary injunctive relief. *See Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d at 576; *Heinrich*, 284 S.W.3d at 368–69, 373.

Appellants additionally argue that appellees "did not show any prospect of actionable future harm." However, appellants also argue that "the [t]erminated [appellees] have been afforded a further opportunity to defend against the allegations through their reinstatement"—in other words, Port Houston intends to reinitiate disciplinary proceedings. This is further shown by the reinstatement letters, wherein Walter notified the terminated appellees that "Port Houston is immediately placing you on administrative leave while Port Houston addresses your claim of notice regarding the matters that resulted in your prior termination." Additionally, during the temporary injunction hearing, Walter testified that "the information from that report is still valid for us to review," although he stated Port Houston would need to discuss with their legal counsel before determining whether they would seek further action. However, Walter agreed that absent a court order, the complaint is still open for further action. This evidence, along with the testimony related to appellees' Union membership was sufficient for the trial court to find that Port Houston would initiate disciplinary action, which may be based on their Union membership and activity. *See Henry*, 520 S.W.3d at 34; *Super Starr Int'l*, 531 S.W.3d at 838. As such, appellees produced "some evidence" of a probable, imminent, and irreparable injury. *See Henry*, 520 S.W.3d at 34; *Butnaru*, 84 S.W.3d at 204.

**C.     Status Quo**

By their third sub-issue, appellants argue that the trial court's temporary injunction

upends, rather than maintains, the status quo and provides appellees with ultimate relief. *See Butnaru*, 84 S.W.3d at 204. Appellants rely on two cases to support their position. *See Edgewood Indep. Sch. Dist. v. Paiz*, 856 S.W.2d 269 (Tex. App.—San Antonio 1993, no writ); *Dall. Indep. Sch. Dist. v. Daniel*, 323 S.W.2d 639 (Tex. App.—Dallas 1959, writ ref'd n.r.e.). In *Paiz*, a group of students had not passed the state-wide standardized test, which was necessary for graduation, causing the board of trustees to prohibit the students from participating in graduation ceremonies. *Paiz*, 856 S.W.2d at 270. The students sought and received a temporary injunction which required the school district to allow the students to participate in the graduation ceremonies. *Id.* The court of appeals reversed the trial court's order for two reasons: (1) the temporary injunction was technically defective on its face; and (2) "[t]he trial court's order reverse[d] the status quo and, in so doing, it provide[d] plaintiff the complete relief he seeks and deprive[d] the school district of any right to contest the matter before the passage of time renders it moot and [ir]remediable." *Id.* at 270–71.

In *Daniel*, a custodian for a school district alleged his employment was terminated based on his membership in a union and for testimony he provided in another suit. *Daniel*, 323 S.W.2d at 640. Daniel sought and obtained a temporary injunction, requiring the school district to reinstate his employment pending trial. *Id.* The trial court made specific findings related to Daniel's claims, including affirmative findings supporting a *final* determination of his causes of action. *Id.* "[T]hus the ultimate issues of [the] case were decided against appellants in a preliminary hearing." *Id.* at 643. The court of appeals determined that "[t]he order of the court went far beyond the mere maintenance of the

28

status quo." *Id.*

In both cases, the courts of appeals reversed the trial courts' temporary injunction because the injunction reversed the status quo rather than upheld it. *See id.* at 640; *Paiz*, 856 S.W.2d at 270. Here, the status quo is that appellees are employed by Port Houston, which the temporary injunction maintains. Appellants argue that the temporary injunction has the effect of removing appellees' at-will employment status because it "expressly precludes Port Houston from terminating these employees for their serious misconduct, *even if Port Houston strictly follows the requirements of Chapter 614 before doing so*." We disagree with appellants' characterization. Rather, appellees remain at-will employees subject to termination for any reason or no reason at all, but enforces the requirements laid out in Chapter 614, including providing appellees with a signed complaint within in a reasonable time. *See Staff*, 510 S.W.3d at 446 (rejecting Colorado County's argument that Chapter 614's protections as applied altered the at-will employment relationship). Thus, the temporary injunction merely maintains the status quo as it relates to the subject matter of this suit: appellants' alleged violations of Chapter 614 and labor union protections and appellees' continued employment. *See Butnaru*, 84 S.W.3d at 204.

Further, insofar as appellants argue the order awards appellees with ultimate relief and "accomplishes the whole object of the suit," we disagree. Unlike *Daniel*, the trial court here did not make findings supporting the appellees' ultimate claims—it merely found that the appellees have shown a probable right to recovery. *See Daniel*, 323 S.W.2d at 640. Additionally, in *Paiz*, the graduation ceremony would have been held before a final

hearing could take place, thus accomplishing the whole object of the suit: allowing the plaintiffs to participate in graduation ceremonies. *See Paiz*, 856 S.W.2d at 270. The situation here does not have any immediate time constraints that would cause appellees' whole object of the suit to be accomplished. *See id.* Thus, we find *Paiz* and *Daniel* to be inapposite in this regard.

## D. Procedural v. Substantive Relief

Finally, appellants argue that the trial court exceeded its authority because it awarded "substantive rather than procedural relief" to appellees. Appellants assert that the trial court's authority was limited to awarding "an injunction requiring compliance with the procedural protections outlined by its terms." Appellants again rely on *Than* and *Orr*. *See Than*, 901 S.W.2d at 933; *see also Orr*, 2015 WL 5666200, at *3. We have already distinguished appellees' claims from those in *Than* and *Orr*; however, in addition to those differences, *Than* dealt with a permanent injunction, whereas before us now is a temporary injunction. *See Than*, 901 S.W.2d at 933. In neither case had the legislature identified specific procedural protections before either university could act in the manner they had. Here, in contrast, the legislature has specifically enumerated procedural protections for firefighters when a complaint is made against them. *See* TEX. GOV'T CODE ANN. § 614.022–.023. Thus, because the temporary injunction maintains the status quo until trial on the merits can be accomplished, we disagree that the order provides appellees with "substantive relief" not otherwise available to them.

## E. Summary

Having considered and rejected each of appellants' sub-issues to their second

issue, we overrule appellants' second issue.

## VI.    CONCLUSION

We reverse the trial court's temporary injunction as to appellees Jordan and Meador's request for an injunction against disciplinary action for their alleged misconduct, dissolve it, and render a denial of a restriction against disciplinary actions related to the alleged misconduct as it relates to violations of Chapter 614. We affirm the remainder of the trial court's judgment. *See Super Starr Int'l*, 531 S.W.3d at 852.

CLARISSA SILVA
Justice

Delivered and filed on the
26th day of May, 2022.

31