**The Honorable Mark HENRY, County Judge of Galveston County, Petitioner,**

v.

**The Honorable Lonnie COX, Judge of the 56th District Court of Galveston County, Respondent**

No. 15-0993

Supreme Court of Texas.

Argued March 9, 2017

OPINION DELIVERED: May 19, 2017

John B. Dahill, Austin, for Amici Curiae Bexar County Commissioners Court, and Texas Conference of Urban Counties.

Jerilynn Yenne, Angleton, for Amicus Curiae Brazoria County, Texas.

J. Gregory Hudson, Hudson & O'Leary LLP, Austin, for Amicus Curiae Collin County, Texas.

Stan Reid, Austin, for Amici Curiae County Judges and Commissioners Association of Texas, North and East Texas County Judges and Commissioners Association, South Texas County Judges and Commissioners Association, Texas Association of Counties, and West Texas County Judges and Commissioners Association.

Jo Anne Bernal, Kevin P. McCary, Manuel Romero Jr., El Paso, for Amicus Curiae County of El Paso.

Bruce S. Powers, Houston, for Amicus Curiae Harris County.

Nathan Jensen, Conroe, for Amicus Curiae Jensen, Nathan.

N. Terry Adams Jr., Joseph M. Nixon, Nicholas D. Stepp, Akerman LLP, Houston, Edward L. Friedman, Baker & Hostetler LLP, Houston, James 'Trey' E. Trainor III, Akerman LLP, Austin, for Petitioner.

Mark W. Stevens, Galveston, for Respondent.

Justice Willett delivered the opinion of the Court.

People of goodwill can debate Alexander Hamilton's description of the judiciary as the "least dangerous" branch.[1] But none can deny it is the least understood.[2] The Texas Constitution, like the United States Constitution,[3] endues the judiciary with authority equal to that wielded by the so-called political branches.[4] In our constitutional design, the judiciary is a partner, but not a junior partner. And in Texas, judicial power is conferred "by means of express grants of jurisdiction contained in the constitution and statutes."[5]

The issue in this long-running dispute is who has the authority to set the compensation of a county judicial employee: the Galveston County Commissioners Court or Galveston County district judges? One side (County Judge Mark Henry) contends this case boils down to a staffing squabble, a simple budgetary beef, and the Commissioners Court has sole salary-setting power. The other side (the local district judges) frames it as a grave separation-of-powers battle, a clash over judicial independence, and the trial court had authority to order the Commissioners Court to pay a specific salary.

Both depictions are on point: This is a war-of-wills dispute pitting the legislative powers of the Commissioners Court against the inherent supervisory power of the judicial branch. But Texas law provides a ready answer.

The Government Code divides power, letting commissioners set a salary range while letting local judges decide if compensation within that range is reasonable. The judicial branch may direct the Commissioners Court to set a new range, but it cannot dictate a specific salary outside that range. Accordingly, we reverse the court of appeals' judgment and remand to the trial court.

## I. FACTUAL BACKGROUND

Galveston County, like all Texas counties, is governed by a commissioners court.

---

1. THE FEDERALIST No. 78 (Alexander Hamilton).

2. "A recent Zogby International poll not only found that Americans knew the names of the Three Stooges and not of the three branches of government, it also found that most people could name two of Snow White's seven dwarfs, but only 25 percent could name two U.S. Supreme Court justices." Clifton Barnes, *Least Understood Branch: ABA project aims to inform public about the judicial system*, BAR LEADER, AMERICAN BAR ASSOCIATION (Nov.–Dec. 2006), available at http://www.americanbar.org/publications/bar_leader/2006_07/3102/lub.html. *See also* Daniella Diaz, *10% of College Graduates Think Judge Judy Is on the Supreme Court*, CNN, Jan. 19, 2016, available at http://www.cnn.com/2016/01/19/politics/judge-judy-supreme-court-poll/ (citing a report released by the American Council of Trustees and Alumni that concluded our nation's college graduates are "alarmingly ignorant of America's history and heritage").

3. U.S. CONST. arts. I–III.

4. TEX. CONST. art. II, § 1.

5. *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979) (internal quotations omitted).

In 2000, the Galveston County Commissioners Court hired Bonita Quiroga as Director of Justice Administration (DJA), a position the Commissioners Court, acting in its policymaking capacity as Galveston County's governing body, had created a few years earlier.[6] The district judges who urged Quiroga's hiring suggested a salary range of $52,000–$85,000, but the commissioners hired her at a starting salary of $48,000. At the time of her hiring, Quiroga handled court-related matters for the administrative judges, justices of the peace, district judges, and the Commissioners Court. Her job duties also included a substantial portion of non-court-related duties, such as managing the law library and the personal bond program, and collecting fees and fines. Quiroga worked as the DJA until 2014, when County Judge Mark Henry fired her. At the time of her termination, Quiroga's yearly salary was $113,000. Judge Henry maintains he and other commissioners[7] were dissatisfied with various aspects of Quiroga's performance. The Commissioners Court later ratified Judge Henry's decision to terminate Quiroga.

After a job posting for a new DJA was advertised, District Judge Cox issued a sua sponte order requiring Judge Henry to reinstate Quiroga. After significant back-and-forth between the district judges and the Commissioners Court, the parties agreed to a so-called "work-around provision," resulting in the creation of an entirely new position: the Director of Court Administration (DCA). This position was stripped of all non-court-related responsi-bilities such as maintaining the law library and collecting fees and was to be supervised by the administrative judges. The judges[8] requested the new position have a salary range of $85,000–$120,000. The judges' application for the new position of DCA was submitted as a formal proposal to the Commissioners Court, so the commissioners were bound by statute to consider it.[9]

The Commissioners Court's June 2015 agenda included an anticipated discussion of the application to create the DCA position. But before the Commissioners Court could deal with the proposal, the area judges, led by Judge Cox, informed the Commissioners Court that the judges intended to reinstate Quiroga at her former salary of $113,000, but with the lessened job duties commensurate with the proposed DCA position. Judge Cox followed up the notification with another order aimed at Judge Henry and the Commissioners Court, ordering compliance with his first order and all of the details included in the judges' notification to the Commissioners Court.

Eventually the Commissioners Court did consider and accept the proposed DCA position, along with most of the judges' suggestions: (1) the administrative judges would have supervisory authority over the DCA; (2) the DCA's job duties would include only court-related responsibilities; and (3) the area judges could pick the appointee (including Quiroga). The Commissioners Court titled the position "Court

---

6. TEX. CONST. art V, § 18(b) (a county commissioners court "shall exercise ... power[ ] and jurisdiction over all county business").

7. Under our Constitution, the county judge is the "presiding officer" of a county's commissioners court. *Id.*

8. The application for the new position was formally submitted by Judge Lonnie Cox, Judge Barbara E. Roberts, and Judge Kimberly Sullivan, the administrative judges for the Galveston County District Courts, County Courts at Law, and Probate Court, respectively.

9. *See* TEX. LOC. GOV'T CODE § 151.002.

Manager" and set the starting salary at $63,695 with the understanding that this would become a salary range of $57,705–$63,695 in September after amendments to section 75.401 of the Government Code took effect.[10]

Judge Cox filed suit—in his own district court, but before a visiting judge—against Judge Henry, arguing the salary range for the new position was unreasonable. The trial court issued a temporary restraining order and a temporary injunction requiring Judge Henry to: (1) reinstate Quiroga to her old job title of DJA; (2) carve out any non-court-related duties and ensure Quiroga was doing the work of the DCA/Case Manager position; and (3) pay Quiroga her old salary of $113,000 for the new position with decreased duties. A divided court of appeals affirmed, holding the evidence presented at the hearing on the temporary injunction supported the trial court's findings.[11] The court held the trial court acted within its constitutional authority and that the temporary injunction properly maintained the status quo pending suit.[12] A partial dissent in the court of appeals argued the trial court lacked the authority to order Judge Henry to pay Quiroga $113,000 as a set salary, "the

same salary as she received in her old position—a position that no longer exists."[13] According to the dissent, if the trial court found the proposed salary range to be unreasonable, the only appropriate option was for the trial court to order the Commissioners Court to reevaluate and set a new, reasonable salary range.[14] We agree.

## II. ANALYSIS

County Judge Henry argues the trial court erred when it issued the temporary injunction because: (1) the order should have been directed to the Commissioners Court, not just to Judge Henry; (2) the trial court exceeded its authority when it directed Quiroga be reinstated at her former salary of $113,000; and (3) the temporary injunction failed to appropriately maintain the "status quo" pending trial. We agree with Judge Henry on the first two issues, and therefore do not reach the third issue.

■■■ We review a trial court's order granting a temporary injunction for clear abuse of discretion.[15] We limit the scope of our review to the validity of the order, without reviewing or deciding the underly-

---

**10.** The 84th Legislature amended relevant portions of section 75.401 as follows:

(d) A court administrator is entitled to reasonable compensation, _as determined by the judges served and in the salary range for the position_, as set by the commissioners court.

(e) The judges _of the courts served by the court administrator, with the approval of the commissioners court_, shall appoint appropriate staff and support personnel according to the needs of the local jurisdiction.

Act of May 30, 2015, 84th Leg., R.S., ch. 966, § 2, 2015 Tex. Gen. Laws 3410, 3410–11 (codified at TEX. GOV'T CODE § 75.401(d)–(e)). Once these changes to the statute took effect (on Sept. 1, 2015), the Commissioners Court

intended to retitle the DCA position once again—this time from "Court Manager" to "Court Administrator," presumably to match the specific language in the statute. _See_ TEX. GOV'T CODE § 75.401(e).

**11.** _Henry v. Cox_, 483 S.W.3d 119, 159 (Tex. App.—Houston [1st Dist.] 2015).

**12.** _Id._ at 159–60.

**13.** _Id._ at 160 (Harvey Brown, J., concurring and dissenting in part).

**14.** _Id._

**15.** _Walling v. Metcalfe_, 863 S.W.2d 56, 58 (Tex. 1993).

ing merits,[16] and will not disturb the order unless it is "so arbitrary that it exceed[s] the bounds of reasonable discretion." [17] No abuse of discretion exists if some evidence reasonably supports the court's ruling.[18]

## A. The Individual Commissioners—Or at Least the Commissioners Court— Are Indispensable Parties

Texas Rule of Civil Procedure 39 governs the joinder of indispensable parties.[19] A person must be joined as a party if "in his absence complete relief cannot be accorded among those already parties." [20] If a necessary party cannot be joined, the court must determine "whether in equity and good conscience the action should proceed." [21] The first factor for the court to weigh is whether the parties—both present and absent—might be prejudiced by the indispensable party's absence.[22]

In 1890, we held in *Gaal v. Townsend* that when a party seeks to compel a specific action or the performance of a certain duty, "all persons charged with the performance of that duty must be made parties defendant in the writ." [23] Gaal was elected to the El Paso Commissioners Court and, when he was blocked from taking his seat on the court, sued for the right to perform his duties as a newly elected commissioner.[24] County Judge Townsend did not allow Gaal to take his position because Gaal had also recently accepted the position as mayor of Ysleta.[25] Gaal sought a writ of mandamus compelling Townsend to allow Gaal to act as commissioner, but failed to name the rest of the members of the Commissioners Court.[26] We acknowledged that a county commissioners court acts as one body, holding that an order compelling the county judge to take an action properly left to the commissioners court was inappropriate.[27] If the other commissioners were not made parties to the suit, they could not be affected by the court's judgment in any way.[28] "It is clear that a *mandamus* should not issue to compel the county judge to do an act which could only be performed with the consent of others." [29] We held similarly just a few years later.[30]

■ District Judge Cox argues that *Gaal* is inapposite, in part, because of our holding almost a century later in *Vondy v.*

16. *Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex. 1978).

17. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

18. *Id.* at 211.

19. Tex. R. Civ. P. 39.

20. Tex R. Civ. P. 39(a)(1).

21. Tex. R. Civ. P. 39(b).

22. *Id.*

23. 77 Tex. 464, 14 S.W. 365, 365 (1890).

24. *Id.*

25. *Id.* The Texas State Historical Association names Ysleta as one of, if not the, oldest towns in Texas. It has now been incorporated as a part of the city of El Paso. Nancy Hamilton, "Ysleta, Texas," Handbook of Texas Online, June 15, 2010, available through the Texas State Historical Association at https://tshaonline.org/handbook/online/articles/hny 06.

26. *Gaal*, 14 S.W. at 365.

27. *Id.* at 365–66.

28. *Id.* at 366.

29. *Id.*

30. *City of Austin v. Cahill*, 99 Tex. 172, 88 S.W. 542, 548 (1905) (holding "those who are to perform the command of the writ" are necessary parties).

*Commissioners Court of Uvalde County.*[31] In *Vondy*, we held that a party's failure to join one member of the Uvalde County Commissioners Court in his individual capacity did not deprive the trial court of subject-matter jurisdiction because the commissioners did not object to the omission and because *Gaal* was distinguishable and not controlling.[32] Judge Cox argues that this reasoning should apply here because Judge Henry waived this argument at the trial court and because the other commissioners participated in the temporary-injunction hearing and would not be prejudiced.[33]

Judge Cox misses key takeaway points from *Vondy*—namely, how and why we distinguished it from *Gaal*. We noted that Gaal had failed to name anyone other than the county judge in his petition, even though a majority vote from the commissioners would be necessary to allow him to take his seat.[34] By contrast, Vondy had named the county judge and three of the four commissioners in his petition for mandamus.[35] Additionally, unlike Gaal, Vondy had named the commissioners' court as a party.[36] Here, Judge Cox named only Judge Henry as the party to the requested injunction—not the Commissioners Court nor the four other commissioners.

██ Judge Cox also quotes from our decision in *Brooks v. Northglen Association* for the proposition that "it will be rare indeed" for a reviewing court to determine the trial court lacked jurisdiction when the party waives the argument and the absent party participated in the trial.[37] But we aren't dealing with a full trial here, and subject-matter jurisdiction can be raised for the first time on appeal.[38] Moreover, while two of the commissioners testified at the temporary-injunction hearing, we have held that being a witness in and of itself does not subject oneself to the jurisdiction of the court.[39] The commissioners did not "participate" in the temporary-injunction hearing as parties, nor is there any evidence to suggest they "purposely bypassed the proceedings." [40]

It would be improper to hold that, because County Judge Henry may have fired Quiroga unilaterally, the trial court can now order Judge Henry to act unilaterally. Judge Henry's decision to terminate Quiroga was ratified by the Commissioners Court. Regardless, this case is not about Judge Henry's authority to fire Quiroga in the first place. Rather, we must determine whether the trial court had the authority to order Judge Henry to act in place of the Commissioners Court.

██ Finally, it matters not that the temporary-injunction order purported to compel the actions of Judge Henry and all those "acting in concert" with him. A county judge presides over the commissioners court,[41] but he cannot act in its place.[42]

---

31. 620 S.W.2d 104 (Tex. 1981).

32. *Id.* at 107–08.

33. *See id.* at 108.

34. *Id.* at 107; *see also Gaal,* 14 S.W. at 365.

35. *Vondy,* 620 S.W.2d at 107.

36. *Id.* ("[T]he fact that the commissioners court itself was named in the petition distinguishes this cause from *Gaal v. Townsend*[.]").

37. 141 S.W.3d 158, 162–63 (Tex. 2004).

38. *Clint Indep. Sch. Dist. v. Marquez,* 487 S.W.3d 538, 558 (Tex. 2016).

39. *Werner v. Colwell,* 909 S.W.2d 866, 870 (Tex. 1995).

40. *Brooks,* 141 S.W.3d at 163.

41. Tex. Const. art. V, § 18(b).

Our reasoning in *Gaal* applies here. The other commissioners—or at least the Commissioners Court—were indispensable parties. Judge Cox's failure to name them deprived the trial court of the authority to bind them.

## B. The Trial Court Lacked the Authority to Dictate the Administrator's Specific Salary Outside the Designated Range

 A quarter-century ago we observed "[t]he powers and duties of the commissioners courts include aspects of legislative, executive, administrative, and judicial functions."[43] A core component of that legislative function is the county budget-making process. At the same time, the Texas Constitution grants the judicial branch authority equal to that of our sister branches.[44] Courts have the power—indeed the duty—to safeguard the proper administration of justice throughout the state.

Our precedent also recognizes the judicial branch's inherent or implied authority, authority derived not from statute but born of the constitutionally mandated separation of powers and "woven into the fabric of the constitution by virtue of their origin in the common law."[45]

 This authority includes, in part, the ability to compel the necessary money to compensate county employees who assist in carrying out the courts' responsibilities.[46] For example, we held in *Vondy* that a district court could compel a commissioners court to pay a salary to constables acting as process servers for the courts.[47] Officials can be so necessary to the administration of the judicial system that failing to properly compensate them would interfere with the system itself.[48] So when the Uvalde County Commissioners Court refused to pay the constables at all, we held the district court had the authority to order payment.[49] Again, part of this authority is derived from the judiciary's inherent authority to ensure the proper administration of justice. But the Texas Constitution also vests district courts with "general supervisory control" over the commissioners courts[50] by which the court can mandate the performance of a ministerial or nondiscretionary statutory duty.[51]

 Judge Cox argues that he, and by extension the trial court, was exercising this supervisory authority over the Commissioners Court when he ordered Judge Henry to reinstate Quiroga at her old salary. He argues that without the ability to order, by injunction or mandamus, the Commissioners Court to set a specific sala-

---

**42.** *Gaal,* 14 S.W. at 365–66.

**43.** *Ector Cty. v. Stringer,* 843 S.W.2d 477, 478 (Tex. 1992).

**44.** Tex. Const. art. II, § 1.

**45.** *Eichelberger,* 582 S.W.2d at 398.

**46.** *See Vondy,* 620 S.W.2d at 109–10. The judicial branch must be allowed to compel sums of money from the legislative branch. "If this were not so, a legislative body could destroy the judiciary by refusing to adequately fund the courts." *Id.* at 110.

**47.** *Id.*

**48.** *Id.* ("The judicial system of this state cannot function properly if those officials who are responsible for carrying out certain duties in that process are not properly compensated.").

**49.** *Id.*

**50.** Tex. Const. art. V, § 8 ("The District Court shall have appellate jurisdiction and general supervisory control over the County Commissioners Court, with such exceptions and under such regulations as may be prescribed by law.").

**51.** *Vondy,* 620 S.W.2d at 109.

ry, "'orders' to set a 'reasonable' salary become little more than advisory opinions," and "disinterested and willful commissioners courts ... may win by delay and attrition what they cannot otherwise achieve."

 But the judiciary's constitutionally conferred supervision over a commissioners court is not boundless. When exercising what the Constitution calls "general supervisory control," a court may not usurp legislative authority by substituting its policy judgment for that of the commissioners court acting as a legislative body.[52] Instead, it can only set aside decisions or actions of the commissioners court that are illegal, unreasonable, or arbitrary—"but there the power of the court ends."[53] The Constitution makes clear that a district court's supervisory power remains subject to "exceptions [and] regulations as may be prescribed by law."[54]

Government Code section 75.401 is such a law. In 2015 the Legislature clarified the salary-setting roles of commissioners and district judges vis-à-vis court administrators. Under section 75.401, the district judges ("the judges served") determine if compensation is "reasonable," but the range is "set by the commissioners court."[55] Here, the Commissioners Court did not refuse to pay the employee's salary, as happened in *Vondy*. It merely decided to pay a salary the district judges thought was too low.

 As we read the Constitution and the Government Code, the judiciary's role is not to dictate the salaries of county judicial administrators, other than within the range as the statute allows. Article V of the former gives commissioners courts "power[ ] and jurisdiction over all county business," and section 75.401(d) of the latter gives them exclusive authority to set a court administrator's salary range.[56] Here, the Commissioners Court *did* set a salary range. The local district judges may reasonably think it unreasonable, but separation of powers forbids them from mandating specific compensation outside the designated range.[57] If the salary range is off-kilter, the Commissioners Court—and only the Commissioners Court—must reset it. The "judges served" can proscribe unreasonable compensation (require a new salary range), but they cannot prescribe reasonable compensation (require a salary outside the range). That is, if they believe the range set by the Commissioners Court is unwarranted—either too extravagant or too miserly—they can tell the Commissioners Court to reset it. And perhaps re-reset it. Nothing more.

 This is not to say the judges served may hold the commissioners court hostage by endlessly claiming the chosen salary range is "unreasonable."[58] Determining reasonableness is an objective test and does not hinge on the district judges' subjective belief that the salary range is unreasonable. Commissioners courts' orders are entitled to the same respect shown all other courts provided for in our

---

52. *Stringer*, 843 S.W.2d at 479.

53. *Id.* (quoting *Lewis v. City of Fort Worth*, 126 Tex. 458, 89 S.W.2d 975, 978 (1936)).

54. TEX. CONST. art. V, § 8.

55. TEX. GOV'T CODE § 75.401(d).

56. TEX. CONST. art. V, § 18(b); TEX. GOV'T CODE § 75.401(d).

57. TEX. CONST. art. V, § 8; *see also* TEX. GOV'T CODE § 75.401(d).

58. *See* TEX. GOV'T CODE § 75.401(d) ("A court administrator is entitled to *reasonable* compensation ... as set by the commissioners court") (emphasis added).

Constitution.[59] Their decisions are reviewable only upon a showing of abuse of discretion or lack of jurisdiction.[60] "In short, the district court may order the commissioners court to exercise its discretion, but cannot tell the commissioners what decision to make." [61] Thus, the judges served may not substitute their view of what's reasonable for that of the commissioners court, and instead may only consider whether the commissioners court abused its discretion when selecting a "reasonable" salary range.

## III. Conclusion

■ Our ingenious constitutional design features "three distinct departments," none of which "shall exercise any power properly attached to either of the others." [62] "In fact, the Texas Constitution takes Madison a step further by including, unlike the Federal Constitution, an explicit Separation of Powers provision to curb overreaching and to spur rival branches to guard their prerogatives." [63] This standalone provision, "present in every Texas Constitution since 1845," [64] curbs judicial power as surely as it curbs legislative and executive power.

Here, the county's judicial branch encroached on the county's legislative branch, the Commissioners Court, which was performing a constitutionally and statutorily authorized function.[65] Personnel is

policy, as they say, and fiscal-policy decisions, including staffing, are a quintessentially legislative prerogative. Neither the Constitution nor the Government Code allows the judiciary to usurp a county's budgeting discretion by, for example, dictating specific salaries for county employees other than within the designated range, as the Code allows. County budgets are set by county budgeters. And while section 75.401(d) authorizes the "judges served" to determine ultimately what qualifies as "reasonable compensation," step one in the process, the salary range, is "set by the commissioners court." [66]

In this case, the trial court lacked the authority—constitutional, statutory, inherent, or otherwise—to require County Judge Henry to reinstate a county judicial employee at a specific salary. At most, the trial court should have directed the Commissioners Court to reset the range. As it stands, however, the trial court lacked the authority to bind the Commissioners Court in the first place, because Judge Cox failed to name anyone but Judge Henry in the request for injunctive relief. The trial court thus erred in issuing the temporary injunction.

We trust the parties, all public servants of goodwill, will reach a collaborative agreement sooner rather than later. As for this dispute, we REVERSE the court of appeals' judgment and REMAND to the

59. *Yoakum Cty. v. Gaines Cty.*, 139 Tex. 442, 163 S.W.2d 393, 396 (1942).

60. *Id.; see also Stringer*, 843 S.W.2d at 479.

61. *Stringer*, 843 S.W.2d at 479.

62. Tex. Const. art. II, § 1.

63. *In re State Bd. for Educator Certification*, 452 S.W.3d 802, 808 n.39 (Tex. 2014).

64. *Terrazas v. Ramirez*, 829 S.W.2d 712, 733 (Tex. 1991).

65. *See* Tex. Const. art. V, § 18(b); Tex. Gov't Code § 75.401(d).

66. Tex. Gov't Code § 75.401(d) ("A court administrator is entitled to reasonable compensation, as determined by the judges served and in the salary range for the position, as set by the commissioners court.").

trial court for further proceedings consistent with this opinion.