

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-23-00594-CV

**IN RE THE TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES**

Original Mandamus Proceeding[1]

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
                Liza A. Rodriguez, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: October 11, 2023

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

In the underlying dispute, the Department of Family and Protective Services is the permanent managing conservator of four children. After an associate judge rendered a permanency order for the children, the Department sought de novo review before the referring trial court, the Honorable Mary Lou Alvarez (trial court). The trial court held a hearing; it affirmed the order's provisions that require the Department to pay a specific caregiver monthly financial assistance at a specific rate for an extended period. The Department filed a petition for writ of mandamus and an emergency motion to stay the trial court's order. We granted the emergency motion and stayed the order. Now, we conditionally grant the petition to rectify the order's void provisions.

---

[1] This proceeding arises out of Cause No. 2020-PA-01747, styled *In the Interest of Z.C., Z.T., Z.T., J.C., Children*, pending in the 45th Judicial District Court, Bexar County, Texas, the Honorable Mary Lou Alvarez presiding.

## BACKGROUND

In this petition for writ of mandamus, the Department complains that the trial court has again violated the Separation of Powers Clause by ordering the Department to expend funds in a particular manner.[2] The facts differ somewhat from previous Department cases before the same trial court, but this trial court has again ruled "contrary to clear and determined law about which there is no confusion or question as to its interpretation." *See In re Ginsberg*, 630 S.W.3d 1, 8 (Tex. Spec. Ct. Rev. 2018) (quoting *In re Barr*, 13 S.W.3d 525, 545 (Tex. Rev. Trib. 1998)).

In this case, the Department is the permanent managing conservator of Z.C., Z.T., Z.T., J.C. In September 2020, the Department placed the children with their maternal great-aunt S.C., who has been their caregiver ever since. In January 2023, a permanency hearing was held in the underlying case before an associate judge, the Honorable Charles Montemayor, who ordered the Department to do the following:

> [T]he Department must continue paying kinship funds to the children's placement and those payments will continue to new relative placements if the children are moved to a new family placement. Payments are to continue until licensing of the placement occurs. The Department is to take funds from other sources if federal kinship funds are exhausted.

Asserting the order violated applicable statutes and exceeded judicial authority, the Department sought de novo review before the referring court. On March 10, 2023, the trial court

---

[2] *See generally In re Tex. Dep't of Family & Protective Servs.*, 660 S.W.3d 161 (Tex. App.—San Antonio 2022, orig. proceeding); *In re Tex. Dep't of Family & Protective Servs.*, 660 S.W.3d 248 (Tex. App.—San Antonio 2022, orig. proceeding); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00085-CV, 2022 WL 2820937 (Tex. App.—San Antonio July 20, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00087-CV, 2022 WL 3219596 (Tex. App.—San Antonio Aug. 10, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00091-CV, 2022 WL 2230720 (Tex. App.—San Antonio June 22, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00092-CV, 2022 WL 2230719 (Tex. App.—San Antonio June 22, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00094-CV, 2022 WL 3219924 (Tex. App.—San Antonio Aug. 10, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00165-CV, 2022 WL 2135534 (Tex. App.—San Antonio June 15, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00166-CV, 2022 WL 3372425 (Tex. App.—San Antonio June 15, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00175-CV, 660 S.W.3d 175 (Tex. App.—San Antonio Aug. 3, 2022, orig. proceeding) (mem. op.).

held a hearing. *See* TEX. FAM. CODE ANN. § 201.015 (requesting a de novo hearing before the referring court). During the hearing, the Department argued the associate judge's order must be vacated because it ordered the Department to pay monthly cash assistance beyond the statutory guidelines to an ineligible caregiver. The attorney for the children conceded that S.C. no longer qualifies for monthly cash assistance under the statutory scheme, but the attorney nevertheless argued that S.C. was entitled to monthly cash assistance because it was in the best interest of the children.

At the end of the hearing, the trial court ruled on the Department's motion. Its "Order Granting in Part and Denying in Part Petitioner's Request for De Novo Hearing Before the Referring Court," which it signed on March 27, 2023, includes these provisions:

4.1.1 The Department is ordered to continue to pay the equivalent of monthly "kinship funds" to any and all caregivers / placements for the (4) children in its care so that the Department shall meet the needs of all (4) children in its care as required by law.

4.1.2 Any and all funds in arrears that have not been paid to the caregiver shall be tendered no later than March 15, 2023 at 5:00 PM.

4.1.3 The Court finds the equivalent of "kinship funds" to be a monthly financial assistance of $1520.00.

The Department filed this original proceeding; it argues that the trial court's order violates the Separation of Powers Clause because the order usurps the Department's authority to set and regulate the relative caregiver program. The Department also argues that it cannot legally comply with the order.

We requested responses from the trial court and the children's attorney, but neither filed a response.

### STANDARD OF REVIEW

Generally, to obtain mandamus relief, "the Department must show the trial court committed a clear abuse of discretion and the Department has no adequate remedy by appeal." *In*

*re Tex. Dep't of Family & Protective Servs.*, 660 S.W.3d 161, 164 (Tex. App.—San Antonio 2022, orig. proceeding) (citing *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding) (per curiam)). A trial court abuses its discretion if it clearly fails to correctly analyze or apply the law. *Walker v. Packer*, 827 S.W.2d 833, 839, 840 (Tex. 1992) (orig. proceeding). In that case, if the challenged order is void, the Department does not have to show a lack of an adequate appellate remedy. *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding) (per curiam). "A judgment is void only when it is apparent that the court rendering judgment had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court." *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990) (orig. proceeding) (per curiam) (citing *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex. 1987)).

## SEPARATION OF POWERS

"The separation of the powers of government into three distinct, rival branches—legislative, executive, and judicial—is the absolutely central guarantee of a just Government." *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 569 (Tex. 2013) (internal quotation marks omitted). The Texas Constitution divides the branches' powers:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1; *see Henry v. Cox*, 520 S.W.3d 28, 38 (Tex. 2017). Authority entrusted in one branch of government cannot be exercised by another branch "unless expressly permitted by the constitution." *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).

**A.    Violations**

"The Separation of Powers Clause is violated (1) when one branch of government assumes power more properly attached to another branch or (2) when one branch unduly interferes with another branch so that the other cannot effectively exercise its constitutionally assigned powers." *In re D.W.*, 249 S.W.3d 625, 635 (Tex. App.—Fort Worth 2008, no pet.).

**B.    The Powers of our Co-Equal Branches of Government**

Although the Separation of Powers Clause "appears on its face to be rigid and absolute . . . such a construction would be impossible to implement in all cases because not every governmental power fits logically and clearly into any particular 'department.'" *Tex. Comm'n on Env't Quality v. Abbott*, 311 S.W.3d 663, 671 (Tex. App.—Austin 2010, pet. denied) (internal quotation marks omitted). Thus, Texas courts have never held that the three branches of government operate with absolute independence; instead, courts have "long held that some degree of interdependence and reciprocity is subsumed within the separation of powers principle." *Id.* at 672. Accordingly, the separation of powers doctrine "enjoins upon its branches separateness but interdependence, autonomy but reciprocity." *Id*.

But where one branch of government assumes powers more properly attached to another branch or unduly interferes with the powers of another, any resulting order is void. *See State v. Ferguson*, 125 S.W.2d 272, 274 (Tex. 1939) (orig. proceeding) (noting the availability of mandamus relief from a void order where one branch of government usurps the power of another); *In re D.W.*, 249 S.W.3d at 635.

**C.    Judicial Branch**

The power of the judiciary is "divided among . . . various named courts by means of express grants of 'jurisdiction' contained in the constitution and statutes." *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979). "In addition to the express grants of judicial power to each

court, there are other powers which courts may exercise though not expressly authorized or described by constitution or statute." *Id.*

### 1.     Constitutional Authority

Here, the trial court derives its constitutional power from Article V, section 8 of the Texas Constitution. *See* TEX. CONST. art. V, § 8 ("District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body[.]"). District courts in Texas are invested with the powers explicitly defined in the constitution. *Travelers Indem. Co. of Conn. v. Mayfield*, 923 S.W.2d 590, 594 (Tex. 1996) (orig. proceeding) (quoting *Eichelberger*, 582 S.W.2d at 398).

### 2.     Statutory Authority

The trial court's statutory power derives from the Texas Family Code. The associate judge rendered his order under Chapter 263 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 263.501(b) (requiring court to conduct permanency hearing within ninety days of the date of termination order and at least every six months thereafter); *see also id.* § 263.5031(a)(4) (requiring court to review permanency progress report to determine, inter alia, child's placement with a relative caregiver, continued necessity for placement, and appropriateness of placement); *id.* § 263.502(a-1) (requiring Department to include certain information in permanency progress report); *id.* §§ 155.001–.003 (establishing court's continuing, exclusive jurisdiction over child— including to render and modify orders—after rendition of final order in Title 5 cases, under which Chapter 263 falls).

After the associate judge rendered his order, the Department sought a de novo hearing before the referring court. The Department sought review of the portions of the order relating to financial kinship assistance. *See id.* § 201.015 (requesting a de novo hearing before the referring

court); *see also id.* § 201.204 (detailing the general powers of an associate judge in a child protection case). Because the Department did not seek or otherwise challenge the remainder of the associate judge's order, the unchallenged portions of the associate judge's order became the final order of the trial court. *See id.* § 201.2041(a). Accordingly, the trial court had the statutory duty and power to review and modify the order.

### 3. Inherent Authority

A trial court may also exercise powers "not expressly authorized or described by constitution or statute." *Eichelberger*, 582 S.W.2d at 398.

> These powers are woven into the fabric of the constitution by virtue of their origin in the common law and the mandate of [the Texas Constitution's] separation of powers between three co-equal branches.
>
> . . . .
>
> The inherent judicial power of a court is not derived from legislative grant or specific constitutional provision, but from the very fact that the court has been created and charged by the constitution with certain duties and responsibilities. The inherent powers of a court are those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity. Inherent power . . . springs from the doctrine of separation of powers between the three governmental branches . . . [and] exists to enable our courts to effectively perform their judicial functions and to protect their dignity, independence[,] and integrity.

*Id.* at 398–99 (footnote omitted); *see Henry*, 520 S.W.3d at 36 (recognizing that a trial court's constitutionally-derived inherent authority "is not boundless" and it does not extend to allow a trial court to "usurp legislative authority").

## D. Legislative Branch

The power to make the law of the people is vested in the legislative branch through Article 3, section 1 of the Texas Constitution. TEX. CONST. art. III, § 1 ("The Legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas.'"); *see also Diaz v. State*, 68 S.W.3d 680, 685 (Tex. App.—El

Paso 2000, pet. denied). "The power of the legislature includes the power to make, alter, and repeal laws, when such power is not expressly or impliedly forbidden by other provisions of the state Constitution." *Diaz*, 68 S.W.3d at 685.

The legislative branch is empowered to create agencies and "may delegate its powers to agencies established to carry out legislative purposes, as long as it establishes 'reasonable standards to guide the entity to which the powers are delegated.'" *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 467 (Tex. 1997) (quoting *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740–41 (Tex. 1995)); *see also FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000) ("Defining what legislative power is or when it has been delegated is no easy task."). The legislature is not required "to include every detail and anticipate unforeseen circumstances [as such obligation] would . . . defeat the purpose of delegating legislative authority." *Edgewood*, 917 S.W.2d at 740.

## E.    Department of Family and Protective Services

In this case, the Department is a state agency, administered by the Health and Human Services Commission, that is legislatively designated to, inter alia, provide support and services to children through state and federal funding. *See* TEX. HUM. RES. CODE ANN. § 40.002; *Tex. Dep't of Family & Protective Servs. v. Parra*, 503 S.W.3d 646, 651 n.5 (Tex. App.—El Paso 2016, pet. denied) ("The Health and Human Services Commission oversees the Texas Health and Human Services system, which is composed of five state agencies, including [the Department]."). As a state agency, the Department's "powers are limited to (1) powers expressly conferred by the Legislature, and (2) 'implied powers that are reasonably necessary to carry out the express responsibilities given to [the Department] by the Legislature.'" *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192–93 (Tex. 2007) (quoting *Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 315 (Tex. 2001)).

**F.**     **Relative, Caregiver Placement Program**

In delegating its authority, the legislature directed the Department to create a program "to promote continuity and stability for children for whom the [D]epartment is appointed managing conservator by placing those children with relative or other designated caregivers." TEX. FAM. CODE ANN. § 264.752(a)(1). The program is required to "facilitate relative or other designated caregiver placements by providing assistance and services to those caregivers in accordance with [guidelines set by the legislature] and rules adopted by the [Department's] executive commissioner." *Id.* § 264.752(a)(2).

*1.     Qualifications for Assistance*

For a caregiver to receive assistance under the program, the children must be in the managing conservatorship of the Department and the caregiver must

(1)  be related to the children or have a longstanding and significant relationship with the children or the family of the children;

(2)  be formally approved by [the Department] as a caregiver;

(3)  sign and abide by a written caregiver assistance agreement, which includes a commitment to:

(A)  be available as a continuing placement for the children for at least six months;

(B)  participate in specialized kinship training as recommended and provided by [the Department];

(C)  comply with [Department] requirements limiting or facilitating contact between the parents and the children;

(D)  apply for other forms of assistance, including financial and medical, for which the children may be eligible; and

(E)  comply with any other child specific requirements or limitations; and

(4)  not be a licensed or verified foster home or group foster home.

40 TEX. ADMIN. CODE § 700.1003(a), (b). If the caregiver satisfies the above statutory requirements, in addition to having a family income that does not exceed 300% of poverty as determined by federal guidelines, the caregiver will be eligible to receive cash assistance under the

program. *Id.* § 700.1003(a)–(c); *see also id.* § 700.1007(a) (reiterating the eligibility requirements for assistance under the program).

### 2.    *Additional Assistance*

As alluded to above, an eligible caregiver may receive various forms of assistance from the Department, including limited cash assistance. *See* 40 TEX. ADMIN. CODE § 700.1001 ("Subject to availability of funds and eligibility requirements, caregiver assistance may include case management services, training, referrals to appropriate services and assistance programs, family counseling, child-care services, limited cash assistance, and other support services. Funding for this program is limited to the state and federal funds allocated to [the Department] for this program."); *id.* § 700.1005 (detailing what types of cash assistance are available to eligible caregivers).

### 3.    *Monthly Cash Payment*

A caregiver's monthly cash payment is distributed in the same manner foster care reimbursement payments are and the payment to the caregiver may not exceed 50% of the Department's daily Basic Foster Care Rate. *Id.* § 700.1007(b)–(c). The daily Basic Foster Care Rate is set by the Department based on a rate-setting methodology. *Id.* § 700.1753 (detailing the Department's rate-setting methodology); *id.* § 700.1007(c) ("The amount of the monthly cash payment will be published on the [Department's] website, and is paid per child in the managing conservatorship of [the Department] who is placed in the home of the eligible caregiver.").

### 4.    *Limited Period for Payments*

An eligible caregiver receives a monthly cash payment for a twelve-month period. *Id.* § 700.1007(d). The Department may, if it determines good cause exists, provide a one-time six-month extension. *Id.*; TEX. FAM. CODE ANN. § 264.755(b-1) ("The [D]epartment may not provide monetary assistance to an eligible caregiver . . . after the first anniversary of the date the caregiver

receives the first monetary assistance payment from the [D]epartment" and "[t]he [D]epartment, at its discretion and for good cause, may extend the monetary assistance payments for an additional six months."). "'Good cause' refers to circumstances in which it is in the child's best interest to remain in the home of a caregiver who is receiving monthly cash payments and is generally comprised of actions and steps necessary in order to achieve positive permanency for the child."[3] 40 TEX. ADMIN. CODE § 700.1007(d).

Thus, the legislature authorized the Department to determine the monthly cash assistance a caregiver receives, but it limited the monthly cash assistance payments the Department may make to twelve months after the caregiver began to receive cash payments unless the Department determines good cause exists. *Id.*

## TRIAL COURT'S ABUSE OF DISCRETION

We now apply the clear and determined law to the specific facts of this case. *See In re Ginsberg*, 630 S.W.3d 1, 8 (Tex. Spec. Ct. Rev. 2018).

### A.    Monthly Cash Payments to S.C.

In this case, the Department is the children's managing conservator. S.C., the children's maternal great-aunt, became the children's caregiver in September 2020 and began receiving cash payments under the program in November 2020. S.C. received approximately $1,500 a month in

---

[3] The statute includes examples of good cause:

(1)  the identification, release, or location of a previously absent parent of the child;

(2)  awaiting the expiration of the timeline for an appeal of an order in a suit affecting the parent-child relationship;

(3)  the provision of additional time for the caregiver to complete the approval process for adoption of the child;

(4)  awaiting the approval of a child's placement from another state pursuant the Interstate Compact on the Placement of Children, as provided in Subchapter B, Chapter 162, Texas Family Code;

(5)  a delayed determination of the child's Indian Child status, or awaiting the approval of the Indian Child's Tribe, pursuant the Indian Child Welfare Act, 25 U.S.C. §1901, et seq.; and

(6)  any other circumstance surrounding the child or the caregiver that [the Department] deems to necessitate the extension.

40 TEX. ADMIN. CODE § 700.1007(d).

cash assistance for the children. Because S.C.'s first cash payment was in November 2020, she would receive her final cash payment under the program in November 2021 absent a good cause extension from the Department. *See* 40 TEX. ADMIN. CODE § 700.1007(d); TEX. FAM. CODE ANN. § 264.755(b-1). Finding good cause to do so, the Department granted S.C. a six-month extension.

**B.     Additional Benefits to S.C.**

In addition to the monthly cash payments, S.C. received other forms of assistance under the program. For example, the Department purchased a computer and printer for S.C. to help her with training and licensing so her home could become a verified foster home. A caregiver, such as S.C., who wishes to receive assistance under the program beyond the statutory limit may apply to have her home become a verified foster home. *See* TEX. FAM. CODE ANN. § 264.755(a-1)(1) (requiring, if applicable, the Department to inform a caregiver of the option to become a verified foster home).

**C.     Foster Home Screening**

To operate a foster home, an applicant must be verified by a licensed child-placing agency. *Id.* To acquire verification, a prospective foster home applicant must, among other things, complete a foster home screening. 26 TEX. ADMIN. CODE § 749.2445(a). A foster home screening requires the licensed child-placing agency to obtain twenty-three categories of information about the prospective foster home, including a "criminal history and central registry background check" for the prospective foster parent and "any person over fourteen years of age or older who will regularly or frequently be staying or present at the home." *Id.* § 749.2447(7).

The Department referred S.C. to four separate licensed child-placing agencies to complete the verification process. Two agencies could not assist S.C. due to staffing and resource issues. The remaining two agencies, however, could not complete the foster home screening because S.C.

refused to disclose who frequented her home and further refused to agree to background checks on those individuals.[4]

## D. Trial Court's Role

As we noted above, the legislature charges trial courts with reviewing permanency progress reports to ensure the needs of children under the Department's care are being adequately addressed. TEX. FAM. CODE ANN. § 263.5031; *In re Tex. Dep't of Family & Protective Servs.*, 660 S.W.3d 248, 257 (Tex. App.—San Antonio 2022, orig. proceeding). But that charge presupposes the trial court will faithfully follow the applicable laws. *See* TEX. CONST. art. XVI, § 1 (oath of office); TEX. CODE JUD. CONDUCT, CANONS 2(A), 3(B), 3(B)(2), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. C; *Tesco Am., Inc. v. Strong Indus., Inc.*, 221 S.W.3d 550, 555 (Tex. 2006) (emphasizing that "judges are advocates only for the law"); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) ("A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion.").

We turn now to the trial court's March 27, 2023 order.

## E. Trial Court's Order

Despite S.C.'s failure to have her home approved as a verified foster home, on March 27, 2023, the trial court ordered the Department to pay a $1,520 monthly cash payment to S.C. It also ordered the Department to pay arrears to S.C. to cover the period after S.C. became statutorily ineligible to receive monthly cash payments under the program.

When the trial court rendered its order, S.C. was no longer eligible to receive assistance under the program, and her home was not a verified foster home because she refused to complete

---

[4] At the de novo hearing, a Department representative testified that, after an investigation, it was determined that undisclosed individuals frequented or resided in S.C.'s home.

the verification process. We have not been directed to, nor have we found, any other basis on which a trial court has the authority to extend monthly cash payments under the program. Moreover, even assuming S.C. was still eligible to receive a monthly cash payment, the legislature has vested the authority to set the amount for the monthly cash payment in the Department. *See* 40 TEX. ADMIN. CODE §§ 700.1007(b)–(c), .1753.

As explained above, Family Code section 263.5031(4) requires a trial court to "review" the permanency progress report prepared by the Department. The term "review" is not defined in Chapter 263. Therefore, we look to the ordinary and plain meaning of the term, with a preference to harmonize and find consistency with the statutory scheme as a whole. *See Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015). To "review" means to consider, inspect, or reexamine a subject or thing. *Review*, BLACK'S LAW DICTIONARY (11th ed. 2019). "The inclusion of 'review' within the text of section 263.5031(4) allows the court to inspect, consider, or reexamine the Department's permanency progress report." *In re Tex. Dep't of Family & Protective Servs.*, 660 S.W.3d 161, 171 (Tex. App.—San Antonio 2022, orig. proceeding).

However, absent from section 263.5031(4) is an avenue whereby a court may extend the duration of assistance to a caregiver beyond the statutory limit at a specific rate. Nor does the trial court hold any authority to do either of these functions independently. Instead, as we have recognized, the legislature set specific time limits and requirements on the Department and delegated the power to establish and regulate the program and foster home verification to the Department.

## F.      Joint Pursuit of Child's Best Interest

We recognize the trial court's ongoing statutory and inherent responsibility to act in the children's best interest. But the trial court does not act alone; it acts with "some degree of interdependence and reciprocity [alongside the Department] within the separation of powers

principle." *See Tex. Comm'n on Env't Quality v. Abbott*, 311 S.W.3d 663, 672 (Tex. App.—Austin 2010, pet. denied) ("Co-ordination or co-operation of two or more branches or departments of government in the solution of certain problems is both the usual and expected thing." (quoting *State Bd. of Ins. v. Betts*, 308 S.W.2d 846, 852 (Tex. 1958))). Further, the trial court's authority to act in the children's best interest is not boundless. *Cf. Henry*, 520 S.W.3d at 37. To the contrary, its authority is limited. *E.g.*, *In re Tex. Dep't of Family & Protective Servs.*, 660 S.W.3d at 172 (granting the Department mandamus relief because this same trial court's order "unduly interfered with the powers of the legislative branch").

## G.     Previous Opinions by Our Court

Our numerous mandamus decisions have clarified the limits of the trial court's authority in similar cases. *E.g.*, *In re Tex. Dep't of Family & Protective Servs.*, 660 S.W.3d at 257. We have determined and made clear that "[the trial court] does not have the power to order the Department to provide specific goods and specific services to specific children at specific rates." *Id.* Our opinions and orders should have eliminated any confusion or question about those limits. *See In re Ginsberg*, 630 S.W.3d at 8 (considering whether a legal error was "made contrary to clear and determined law about which there is no confusion or question as to its interpretation" (quoting *In re Barr*, 13 S.W.3d 525, 545 (Tex. Rev. Trib. 1998)); *In re Tex. Dep't of Family & Protective Servs.*, 660 S.W.3d at 257; *In re Tex. Dep't of Family & Protective Servs.*, 660 S.W.3d at 164; *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00085-CV, 2022 WL 2820937 (Tex. App.—San Antonio July 20, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00087-CV, 2022 WL 3219596 (Tex. App.—San Antonio Aug. 10, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00091-CV, 2022 WL 2230720 (Tex. App.—San Antonio June 22, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00092-CV, 2022 WL 2230719

(Tex. App.—San Antonio June 22, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00094-CV, 2022 WL 3219924 (Tex. App.—San Antonio Aug. 10, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00165-CV, 2022 WL 2135534 (Tex. App.—San Antonio June 15, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00166-CV, 2022 WL 3372425 (Tex. App.—San Antonio June 15, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00175-CV, 660 S.W.3d 175 (Tex. App.—San Antonio Aug. 3, 2022, orig. proceeding) (mem. op.); *see also In re L.L.*, 65 S.W.3d 194, 196 (Tex. App.—Amarillo 2001, pet. dism'd) ("Under the doctrine of separation of powers among the executive, legislative, and judicial branches of state government, Texas courts do not dictate to the Legislature how it should discharge its duty.").

## H. Application of Our Court's Precedent

During the de novo hearing, the trial court affirmed on the record that it was familiar with our previous rulings. However, the trial court again issued an order that "usurp[ed] legislative authority by substituting [its] policy judgment for that of the [Department's which was] acting as a legislative body." *See Henry*, 520 S.W.3d at 37; *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00196-CV, 2022 WL 2442169, at *6 (Tex. App.—San Antonio July 6, 2022, orig. proceeding) (mem. op.) (noting that, in issuing its order, "[this same trial court] figuratively removed her judicial robe and stepped into the role of directing Department operations"); *see also* TEX. CODE JUD. CONDUCT, CANONS 2(A), 3(B)(2).

Given (1) our numerous previous opinions explaining the limits of the trial court's authority, (2) our orders requiring the trial court to vacate portions of its orders in similar Department cases on the same or similar grounds, and (3) the record in this case, we necessarily conclude that the trial court clearly abused its discretion and "use[d] the powers of [its] judicial

office to accomplish a purpose which [it] knew or should have known was beyond the legitimate exercise of [its] authority." *See In re Ginsberg*, 630 S.W.3d at 8.

## I.       Challenged Provisions are Void

As we have explained, the trial court disregarded mandatory precedent and unduly interfered with the powers of the legislative branch when its March 27, 2023 order required the Department (1) to pay arrears after the statutory time frame expired and (2) to continue to make monthly cash payments to S.C. at a specific rate.[5] Because the challenged portions of its order violate the Separation of Powers Clause of the Texas Constitution, they are void. *See In re D.W.*, 249 S.W.3d at 635. Accordingly, the Department is entitled to mandamus relief without a showing of no adequate remedy by appeal. *See Sw. Bell Tel. Co.*, 35 S.W.3d at 605.

### CONCLUSION

The trial court lacked the authority—constitutional, statutory, inherent, or otherwise—to (1) order the Department to continue to pay the equivalent of monthly kinship funds beyond the statutory timeframe, (2) order the Department to pay kinship arrears for any funds that are beyond the statutory timeframe, or (3) make any findings regarding the monthly financial equivalent of kinship fund assistance. These portions of its order are void.

We conditionally grant the Department's petition for writ of mandamus. We order the trial court to vacate, no later than fifteen days from the date of this opinion and order, decretal paragraphs 4.1.1, 4.1.2, and 4.1.3 of its March 27, 2023 "Order Granting in Part and Denying in Part Petitioner's Request for De Novo Hearing Before the Referring Court." Our writ of mandamus will issue only if we are informed that the trial court has failed to comply.

Patricia O. Alvarez, Justice

---

[5] Because this issue is dispositive, we do not reach the Department's remaining argument. *See* TEX. R. APP. P. 47.1.